JAMES H. MCKEE, GEORGE W. HARDY ET AL. v. THE GRAND RAPIDS AND REED'S LAKE STREET RAILWAY COMPANY, GEORGE H. WHITE, TRUSTEE, AND THE UNION IRON WORKS COMPANY.

*Use of corporate assets by owner of controlling interest—Tolls— Private management of street railway.*

The right to foreclose must be assumed to be established as against defendants who do not appeal from the decree.

Corporate assets even though under private control, cannot be treated as private property or used without corporate authority or ratification.

A levy of execution on the franchises and property of a street railway company was given priority to a mortgage dated a year

and a half earlier and given to secure bonds which were only meant to be sold in the market, but which, without corporate authority or ratification, had been turned over to the mortgagee, who knew they had never been sold, as collateral security for the private debts of the company's treasurer, who had a controlling interest in its property.

Leases to secure the payment of bonds can have no greater force than the bonds.

Individuals, like corporations, can manage street railways, ferries, turnpikes or bridges, the franchises of which may nevertheless be perpetuated.

A street railway company is a "corporation authorized to receive toll" within the meaning of Comp. L., § 3436, which provides for the sale on execution of the property and franchises of such a corporation.

Tolls at common law include a large class of dues and exactions that are in the nature of fixed rights, and cannot be lawfully exceeded, and are generally, if not universally, connected with some franchise which involves duties as well as privileges of a general or public nature, such as those which belong to fairs, markets, mills, turnpikes, ferries and bridges.

An outstanding claimant under a mortgage proved his claim but did not show whether it arose before or after a levy that was given priority to the mortgage. *Held* that he was bound by the decree.

Appeal from Kent. Submitted June 11 and 12. Decided July 1.

FORECLOSURE. Defendant Union Iron Works Company appeals.

*Norris & Uhl* for complainants.

*Blair, Kingsley & Kleinhans* for appellant. Authority to an agent to sell bonds for his principal does not warrant his pledging them as collateral to his own note, *De Bouchout v. Goldsmid*, 5 Ves., 211; *Illinois v. Delafield*, 8 Paige, 540; *Wiltshire v. Sims*, 1 Camp., 258.

CAMPBELL, C. J. The object of the bill in this case is to foreclose a mortgage on the property and franchises of the street railway company, in favor of alleged bondholders. A foreclosure decree was granted, and no one appeals but the Union Iron Works Company. The

questions raised only become important so far as they affect that company. As against every one else it must be assumed the bonds and mortgage are binding and the right to foreclose complete. This will make it proper to dispense with any recital beyond what may be necessary to dispose of the rights of the appellant.

Appellant was brought in by amendment after the bill was filed, as a subsequent purchaser or incumbrancer under the usual general clause. The interest claimed is that of an execution levy, dated December 29, 1876, on the franchises and other property of the street railway, under the statute providing for seizure and sale of such interests against corporations having the right to receive tolls. Comp. L., § 3436.

The mortgage in controversy was dated May 1, 1875, and was made by the railway company to George H. White, trustee, to secure bonds to the amount of fifteen thousand dollars in thirty bonds of five hundred dollars each. It is claimed by appellant that although the mortgage bears that date, the bonds were never lawfully issued under it, so as to become binding before the levy if at all, and therefore the levy has priority. The validity of the securities, although fixed by the decree as. to all others, cannot of course be made out against appellant except on the facts.

The only bonds concerning which any legal evidence is introduced which would be important in fixing dates are those belonging or claimed as belonging to McKee, amounting to eleven thousand dollars.

At the time the bill was filed McKee held his bonds as collateral security for debts of J. W. Boynton, who was treasurer of the road, and who with his wife appears to have a large interest in the property. Some of Boynton's liabilities were incurred directly to McKee in the first place, and some arose from older debts of himself and Mr. Knapp, also an officer of the road, to a banker who held a part of the bonds as collateral, and whose claim became finally transferred to McKee. Renewals have been had at various times, and on terms

beyond lawful interest, and the debt never amounted to the face value of the bonds.

Although the debts were incurred (as seems to have been the case, although not absolutely established throughout) for means which were used in building the road, credit was never given in any of these dealings to the corporation. If it had been, and if these were corporate debts for which the bonds were pledged by the corporation, it is evident that they could only be enforced to the amount of the actual debt and lawful interest. They were private debts, and the gentlemen who built the road no doubt expected, if they ever had recourse to the corporation, to be paid the full value of their outlay, as would have been just and equitable.

It appears very clearly that these bonds were never designed for any purpose except to be sold in the market absolutely. It appears also that they never were sold, and that this was known distinctly by McKee and all who dealt on their credit. There is no legitimate evidence in the case that shows any authority to use them as collateral. The parties have not seen fit to give proof of any corporate action whatever, except the execution of various securities, and these are only proven by the signatures of their officers. There is an affidavit of Mr. Boynton which in a very general way asserts an authority over the bonds, but this gives no light on his real powers, if he had any, for the company, or their extent, and it is not in the case in such a way as to obviate the objections raised against it.

So far as we can conjecture—for we have no means of doing much more—it is not unlikely that the enterprise was so largely under the ownership of Boynton and his wife that they regarded the corporation as subordinate and did business as if it were merely their agent. It could usually make no difference to them, if they owned it, how the money was raised to build it, and the corporate assets were perhaps treated as if they were in fact, as they were substantially, private prop-

erty. But this would not avail to bind the corporation without evidence that they were authorized or knowingly permitted to bind it by their action. If they chose, as they seem to have done here, to act for themselves in the first place and have their action arranged for or remunerated, as it no doubt would have been, it is not corporate action until thus adopted, and they are only corporate creditors.

It is plain that the idea of putting the bonds in market was always entertained, and more than once attempted. There is, as before suggested, no evidence that they ever went into any one's hands by authority of the company, as valid corporate liabilities capable of enforcement. There are no evidences of holding without notice. Notice is shown. It is impossible, therefore, to consider these bonds as creating with the mortgage any incumbrance older than the levy of appellant. Leases given to secure their payment can have no greater force, and it does not appear that any of the leases were authorized by any action except that of the parties who desired to secure their own engagements.

The question therefore arises whether the levy itself was valid. If valid when made we see no reason why it may not still be enforced by proper order of the court, if not by the sheriff on his own motion.

It is provided by § 3436 of the Compiled Laws that "When any judgment shall be recovered against any turnpike or other corporation, authorized to receive toll, the franchise of such corporation, with all the rights and privileges thereof, together with all their corporate property, both real and personal, may be taken on execution, and sold at public auction." The succeeding sections provide for a sale for the shortest term which bidders will accept, and for a redemption within three months. The practice is somewhat analogous to a common law extent.

The purchaser of the term is allowed during the term

to manage the business and collect the tolls as the company could have done had no sale been made. The only question concerning this levy is whether this is a corporation authorized to receive toll.

Street railway companies are governed by chapter 77 of the Compiled Laws, section 20 of which is as follows: "The rates of toll or fare which any street railway company may charge for the transportation of persons or passengers over their road, shall be established by agreement between such company and the corporate authorities of the city or village where the road is located, and shall not be increased without consent of such authorities." Provision is also made for agreements with township authorities. § 2514.

The word "toll" here used is used in its established common law meaning, and is not a careless expression. The term applies at common law to a very large class of dues and exactions which are in the nature of fixed rights, and which cannot be lawfully exceeded. They are generally if not universally connected with some franchise which involves duties as well as privileges of a general or public nature. The right to receive fixed tolls is found in fairs, markets, mills, turnpikes, ferries, bridges and many other classes of interests where the owner of the franchise is obliged to accommodate the public, and the public in turn are protected from extortion by an obligation to pay only regular dues. The law has in this State always provided some means of fixing rates of ferriage, and passage over turnpikes and bridges. It has also done the same on street and other tram roads. Comp. L., p. 818. They cannot be distinguished in principle from turnpikes on which travelers use their own carriages, and ferries where means of carriage are furnished by the person or company owning them. There is no more difficulty in allowing individuals to exercise these powers than corporations, and the use of them for a brief period in no way interferes with the protection

of the franchise in perpetuity. There might be difficul-
ties in managing larger enterprises, and different rules
have been applied to them. But there are no difficul-
ties in the way of private management of a street rail-
way, and there is no reason why the statute which by
its language includes them should be made to exclude
them.

The levy being valid, and being a lien older in effect,
though later in apparent date than the mortgage, should
be given a preference to it. The decree must be modi-
fied so as to authorize the appellant, unless the lien is
redeemed within three months, to proceed to a sale under
the levy, unless the parties stipulate to allow it to be
paid out of the first proceeds of the sale under the decree.
The amount is ascertained at $1,003.76, with interest
from December 28, 1876.

Appellant is entitled to costs of both courts to be
added to the lien if thus redeemed, or otherwise to be
enforced by execution against complainants.

The other Justices concurred.

At the October term, 1879, R. G. Matthews as owner
of one of the bonds issued by the Grand Rapids &
Reed's Lake street railway company, petitioned to have
the decree modified so as to give his rights as a bond-
holder precedence over the claims of complainant McKee,
and the judgment lien of the defendant, the Union Iron
Works Company. Submitted October 7. Denied Octo-
ber 8.

*Earle* for the motion.

*Norris* and *Ferris* against.

PER CURIAM. The street railway company executed a
trust mortgage to George H. White to secure 30 bonds
of $500 each, all but five of which are said to have
come into the hands of complainants McKee and Hardy,

who applied to the trustee to foreclose the mortgage, and on his refusal filed a foreclosure bill themselves, not bringing in any other bondholders directly as co-complainants, but giving their names and intimating that foreclosure was sought for their benefit also. The defendant The Union Iron Works Company claimed under a levy on the railway company's franchises, which levy the Supreme Court held valid. The chief question in the foreclosure suit as brought up on the appeal and decided, was whether the levy should be preferred in point of time to the claims under the mortgage. The court was satisfied that so far as the proofs went, no claim based on the mortgage was shown to have antedated the levy. But the petitioner Matthews now claims that his bond was bought and paid for before the levy.

Although not in form a complainant in the foreclosure suit, he saw fit to come in and prove his bond befbre a commissioner, upon a reference to ascertain the amount due under the mortgage, and he submitted his rights upon the testimony with the rest, but he did not show when he got or what he paid for his bond. It was vital to his claim of priority to show whether he got it before or after the levy. As he neglected to introduce testimony on this point, he is bound by the decree as it stands, and cannot now complain of it.

Motion denied.