DETROIT CITY STREET RAILWAY COMPANY v. JACOB GUTHARD, RECEIVER OF TAXES.

FORT WAYNE & ELMWOOD STREET RAILWAY COMPANY v. JACOB GUTHARD, RECEIVER OF TAXES.

*Tram railways—Rate of taxation—Tax-law.*

The Tram Railway Act prescribes the rate and manner of taxing such railway companies, but elsewhere provides that the act may be at any time amended or repealed, though this shall not alter the *corporate rights* of companies formed under it.  The subsequent tax law changed the mode of taxation, but the other clause was not disturbed.  *Held*, that the companies came within the tax law; and that the term *corporate rights*, used alone, meant only such essential and fundamental rights as attach to corporations, and did not include incidental privileges and immunities, such as a special standard of taxation.

The effect of legislation, where the Legislature has full power, bears on the question of intent and construction.

Error to the Superior Court of Detroit.   (Chipman, J.) June 21.—June 22.

REPLEVIN and ASSUMPSIT.   Defendant brings error. Reversed.

City Counselor *Henry M. Duffield* for appellant.

*Brennan & Donnelly* and *Fred A. Baker* for The Detroit City Railway, appellant in the case in replevin.

*Otto Kirchner* for the Fort Street & Elmwood Railway, appellant in the case in assumpsit.

COOLEY, J. The plaintiff in these suits respectively is incorporated under "An act to provide for the construction of train railways," approved February 13, 1855. Comp. L. p. 818. The twenty-second section of that act provided that

"Each and every railway company formed under this act shall pay to the treasurer of the State of Michigan an annual tax, at the rate of one half of one per cent. on the whole amount of capital paid in upon the capital stock of said company; which said tax shall be estimated upon the last preceding report of said company, and shall be paid to the said treasurer on the first Monday of July in each year, and shall be in lieu of all other taxes upon all the property of said company."

The thirty-first section of the same act is as follows:

"The Legislature may at any time alter, amend, or repeal this act; but such alteration, amendment, or repeal shall not operate as an alteration or amendment of the corporate rights of companies formed under it, unless specially named in the act so altering or amending this act, nor shall the dissolution of any such company take away or impair any remedy given for or against such corporation, its stockholders, or officers for any liability which shall have been previously incurred."

Section twenty-two remained in force and the companies were taxed under it until 1882, when in the general revision of the tax laws by the adoption of the plan of the Tax Commission it was repealed, and corporations generally, including train railway companies, were for the purposes of taxation put upon the same footing with natural persons, and made taxable upon an assessed valuation of property. But there was no repeal of section thirty-one, and there was no express declaration that the repeal of section twenty-two should be applicable to corporations previously formed and specially named.

The business operations and offices of the plaintiffs are in the city of Detroit, and they were named on the tax rolls of the city for the year 1882, and taxed with other persons.

The defendant, who is Receiver of Taxes, proceeded to make collection, and these suits are the result. One of them is a suit in replevin for property distrained; the other is assumpsit to recover moneys paid for taxes under protest.

No question is made of the regularity of the assessment and levy of the taxes, provided the plaintiffs are lawfully taxable by the city; but the questions raised are questions of power under existing legislation. The contention is that so long as section thirty-one remains in force it is not competent to tax the companies formed under this general incorporation act, otherwise than as provided by section twenty-two.

This contention does not raise a question of constitutional power. By the Constitution of 1850 all acts of incorporation which should be thereafter passed were expressly made subject to alteration, amendment and repeal; and this act may therefore be changed in the legislative discretion. The Legislature might therefore have repealed section thirty-one had it chosen to do so. It has not repealed it, and so long as it stands unrepealed, it must be given effect. The question then is whether with section thirty-one in force, taxation by any other standard than that provided by section twenty-two is competent and admissible.

Different views may be taken of section thirty-one, and were taken or suggested on the argument. It may be regarded as a contract between the State and the corporations, limiting the power of the State for their protection so long as it remains in force, or as a stipulation in respect to the method in which legislation affecting them shall be adopted while it is allowed to stand, or as a legislative rule for the construction of subsequent legislation. It is not important which one of these views is taken; for if to be taxed according to the provisions of section twenty-two is one of the corporate rights of these companies within the meaning of section thirty-one, as plaintiffs contend it is, then they must be taxed under that section while section thirty-one remains in force, or they cannot be taxed at all.

The term "corporate rights" is so general that it is not

surprising questions should arise as to what is included within it. In speaking of corporations it is very common to say generally that they possess certain rights, privileges and immunities; but each of these terms may be employed without any very precise meaning in mind, and the same franchise or exemption may be spoken of at one time as a right and at another as a privilege without seeming error or confusion. But where one term only is made use of in a statute, it must obviously have a somewhat restricted meaning : we cannot suppose it was meant to have the same scope and force as the three terms would have had if all had been employed. And this is very manifest in a case like the one before us. Any alteration or amendment of the general incorporation act which is applicable to companies formed under it, must in some way affect, and therefore may be said to alter or amend, some of their franchises, privileges or immunities, so that all change in the law would be rendered impossible if the term "right" were made to embrace everything which constituted a privilege or an immunity.

Is, then, taxation by the standard and in the mode provided by section twenty-two a corporate right of these corporations within the meaning of section thirty-one ? We think not. The rights intended by that section, we think, are the essential and important rights of corporations formed for the particular purposes which the act had in view, as distinguished from the privileges and immunities which are not so fundamental, but which may nevertheless have value. An attempt to enumerate the rights here would be presumptuous and without value ; but in general terms it may be said that the franchise to construct and operate a road and to levy and collect remunerative tolls or charges would be corporate rights, while exemption from the customary and uniform operation of the essential powers of government, like the power to tax and the power of police regulation, must be regarded as a privilege rather, or an immunity. And considering the standard of taxation provided by section twenty-two as a privilege, the right of the

Legislature to change it was undoubted. It had value, no doubt, while it remained the law, but in so far as it operated to the advantage of these corporations, it was a disadvantage to all other corporations and persons, and therefore lacked the element of equality which we expect to find in whatever we dignify as a right in contradistinction to a privilege or immunity, either of which suggests discrimination, advantage or favor.

Another view of the case is to our minds conclusive. So long as the Legislature possesses full power over the subject, the question of the effect of what they have assumed to do must be a question of intent and construction. Now that the Legislature intended to make these corporations taxable under the Act of 1882 is plain from the fact that they repealed section twenty-two, leaving them not otherwise taxable at all. No one suggests or supposes it was the intention to give them complete exemption.

The judgments must be reversed. In the case first named judgment will be entered for defendant for the amount of the tax in question, with costs; and in the second he will recover his costs only, the tax having been paid.

The other Justices concurred.