CHARLES H. HACKLEY AND THOMAS HUME, SURVIVORS, ETC., v. ANDREW E. MACK, SHERIFF OF CLARE COUNTY.

*Railroad company—Specific taxes—Warrant for collection—Differs in no essential particular from an execution—Must be levied on property of corporation—If legal title has passed to another party for a valuable consideration, who is in peaceable possession, lien of State cannot be enforced by such execution until right of State has been fixed in the equity court—Railroad company and purchaser necessary parties to such a suit—Bill in aid of execution—Sheriff cannot file—Remedy only available to creditor or legal representative—Track and road-bed of railway company not subject to execution levy—Chancery rule 123[1]—Not applicable to suit pending at time of its adoption in which answer has been filed—Cross-bill—Defendant in has right to demur or answer—And support his defense by proofs—Nothing in rule 123 depriving him of any rights—Order allowing amendment of answer so as to come under the rule, and not providing for such defense, illegal—Can be sustained only on matters growing out of and embraced in original bill—And only filed where defendant could file original bill.*

1. A railroad company, organized under the general laws of Michigan, conveyed *all* of its real and personal property to a mortgage creditor,

---

[1] Chancery Rule 123. "In any case in equity where a defendant shall claim from the complainant any relief which, according to the established course and practice of courts of chancery, might be had by cross-bill, such defendant shall be at liberty by his answer to present the facts upon which his equity rests, and to claim by such answer the benefit of a cross-bill, and the court shall have power to give relief upon such answer to the same extent that it might have given it had a cross-bill been filed. But if the cause be such that, if a cross-bill had been filed, the practice of the court would have required it to be sworn to, the answer claiming such relief shall be under oath, notwithstanding an oath thereto may be waived by the bill." Adopted March 6, 1884.

who discharged his mortgage and surrendered the accompanying bond. This was in November, 1881, and thereafter the purchaser controlled the property until January 2, 1882, when he conveyed it to other parties for a valuable consideration, who recorded their deed March 18, 1882, and remained in *peaceable* possession of the property until June 5, 1882. At that date it was seized by the sheriff of Clare county, Michigan, by virtue of a warrant issued by the Auditor General May 16, 1882, for the collection of an alleged indebtedness of the railroad company to the State for specific taxes assessed for 1879 and 1880.

*Held,* in a suit brought by such purchasers to restrain a sale under said warrant, that it differed in no *essential* particular from an execution, and, under the statute authorizing it, must be levied upon the property of the corporation therein named; that as the *legal* title to the property seized was not in such corporation, but in complainants, if the property could be reached *at all* under the warrant, such right was based upon the statutory lien asserted by the State, which, if existing, could not be enforced by execution, under the circumstances of the case, unless directed by a court of *equity* after the right of the State had been adjudicated upon in a suit in its behalf in *said* court, against the railway company and complainants.

2. A sheriff cannot file a bill in aid of an execution levy on property the *legal* title to which has been transferred by the execution debtor before such levy. This remedy is available only to a creditor or his legal representative.

3. There is no law in Michigan authorizing the levy of an execution on the track or road-bed of a railway company; if any levy can be made upon the corporate property, aside from such goods and chattels as may be found and seized by the sheriff, it is only on the franchise of earning tolls as provided by the corporation laws.

4. Chancery rule 123, permitting a defendant to present a claim for affirmative relief in his answer, does not apply to a suit pending at date of its adoption in which an answer has been filed.

5. Upon filing a cross-bill the complainant in the original bill has the right to demur or answer, and traverse the matter set up therein, and support his defense by proofs. There is nothing in chancery rule 123 which deprives him of the benefits of such an issue, or of any rights to which he was entitled, in defending against the matter set up in the answer, as fully as he could have done before the adoption of the rule; and an order allowing a defendant to amend his answer by converting it also into a cross-bill under the rule cited, without making provision for framing such an issue, and for a defense thereunder, by the complainant, cannot be sustained.

6. A cross-bill can be sustained only on matters growing out of the original bill and embraced in it, and can only be filed in a case where the defendant could file an original bill to secure the same relief.

Appeal from Clare. (Hart, J.) Argued February 11, 1886. Filed April 15, 1886.

Appeal from decree dismissing bill. Reversed, and decree entered making injunction perpetual, but without prejudice to the rights of the State. The facts are stated in the opinion, and in head note 1.

*Smith, Nims, Hoyt* and *Erwin*, for complainants:

A cross-bill should be filed at time of filing answer, and before replication thereto: Jennison's Ch. Pr. 389, 390; and can be sustained only on matters growing out of the original bill and embraced in it: Id. 388; *Andrews v. Kibbee*, 12 Mich. 96–7; *Farmers' & Mechanics' Bank v. Bronson*, 14 Id. 361, 372; Story's Eq. Pl. § 631; Adams Eq. pp. 347, 402–3 (mar. pag. 5th Am. ed. and note, p. 403).

Complainants were *bona fide* purchasers for value, free from any lien for the taxes claimed by the State. They purchased from one in possession, claiming to be the owner, and took possession under their deed; and the property levied upon was not seized in pursuance of the warrant—was not the property of the railroad company. One who assumes as owner to convey lands of which he is in possession and occupancy must be deemed *prima facie* to have the right to do so: *Gamble v. Horr*, 40 Mich. 561; *McFarlane v. Ray*, 14 Mich. 470; *Hall v. Kellogg*, 16 Id. 138; *Beyschlag v. Van Wagoner*, 46 Id. 91; *Bennett v. Horr*, 47 Id. 222; *Burrill v. Nahant Bank*, 2 Metc. 163.

The Auditor General made no attempt to collect the taxes prior to April, 1882, and a purchaser had the right to rely upon the presumption of the performance of such official duty; and the State is estopped by the laches of its Auditor General as against innocent purchasers: *Clark v. Crane*, 5 Mich. 154; *Houghton Co. v. Aud. Genl.*, 41 Id. 30; Cooley on Taxation, p. 215; *French v. Edwards*, 13 Wall. 506–11; Cooley on Const. Lim. 74–8.

The warrant should have been directed to the sheriff of Muskegon county, where the corporation had its principal business office: How. Stat. § 1250; and this statute is mandatory: Cooley on Taxation, 212; Id. on Const. Lim. p. 74, and cases cited on page 78.

If a lien existed for the taxes, it should be enforced by a bill in chancery under How. Stat. §§ 1218–24; and the law for the collection of this tax must be strictly pursued: Cooley

on Taxation, 200–1–3 [notes]; *Houghton Co. v. Aud. Genl.*, 41 Mich. 28; *Hoyt v. East Saginaw*, 19 Id. 39, 46; *Clark v. Crane*, 5 Id. 151.

The railroad company could sell, if so disposed, any part or the whole of its property: How. Stat. §§ 3313, 3351–2, 4866; but, independent of positive law, all corporations have the absolute *jus disponendi* of lands and chattels, neither limited as to its objects nor circumscribed as to quantity; 2 Kent's Com. 281; *Town v. Bank of River Raisin*, 2 Doug. 530–47; *Bank of Mich. v. Niles*, 1 Id. 401; *Regents of the University v. Detroit Young Men's Society*, 12 Mich. 138, 160; *Thompson v. Waters*, 25 Id. 214, 224–6–7; *Detroit v. Mut. Gas Co.*, 43 Id. 594, 601–2; *Covert v. Rogers*, 38 Id. 363; *Thomas v. R. R. Co.*, 101 U. S. 71, 85–6; *Wood v. Bedford R. R. Co.*, 8 Phil. 94; *Joy v. Jackson & Mich. P. R. Co.*, 11 Mich. 165; Angell & Ames on Corp. (11th ed.) §§ 187, 191; 2 Kent's Com. 280–1; *Barry v. Merchants' Ex. Co.*, 1 Sandf. Ch. 280.

An unauthorized sale by a railroad company may be carried into effect by the consent of all parties interested: *R. R. Co. v. Howard*, 7 Wall. 392; *Thomas v. R. R. Co.*, 101 U. S. 71, 86; *Parish v. Wheeler*, 22 N. Y. 494, 508; *Bissell v. Mich. Sou. etc., R. R. Co.*, Id. 262.

*Moses Taggart*, Attorney General, and *Edward Bacon*, for defendant:

The specific taxes, to prevent the collection of which this suit is brought, were a percentage of *gross* receipts, to which the State became *absolutely* entitled by the mere existence of such receipts: How. Stat. § 3360; and the State was entitled to the same, to be ascertained by a mere mathematical calculation, regardless of the amount of such receipts in either year, or whether the whole railroad was operated or only a portion of it, and whether such operation continued for the entire year or a part of it: *State v. McFetridge*, 64 Wis. 130; and had no annual report been filed, the tax would have become certain as soon as the Auditor General could ascertain the amount of the gross receipts by other means: How. Stat. § 1249.

The statute fixing the percentage was notice to all the world as much as any statute can be, and ignorance of its provisions cannot avail complainants; it is a part of the same general law under which the rights, privileges, and franchises described in complainants' title deeds originated, and which

are alleged to be the source of great profit to them. No special assessment, notice, or demand was necessary to assure the rights of the State: *Ketchum v. St. Louis*, 101 U. S. 315–16–17; *U. S. v. Erie Ry. Co.*, 107 U. S. 2; *Dollar Savings Bank v. U. S.*, 19 Wall. 227; *Gillette v. City of Denver*, 21 Fed. Rep. 823–4, and cases cited.

Where the State has a right to its percentage, denominated specific taxes, such right is accompanied by the statutory lien to secure payment of such taxes; the lien is incident to the percentage, or tax, by force of the statute (*City & Co. of San Francisco v. Jones*, 20 Fed. Rep. 189, and cases cited), which is in effect an assignment by the corporation, at time of filing its articles of association, transferring in advance to the State all that percentage of all future gross receipts set apart by law as specific taxes, and this statute is legal notice to all purchasers: *Ketchum v. St. Louis*, 101 U. S. 315–17.

The statutes of this State, in force from 1872 hitherto, grant ample powers and various means for the collection of specific taxes,—proceedings in chancery, suit at law, and Auditor General's warrants: How. Stat. §§ 1220 to 1224, 1245 to 1250; *Bothwell v. Millikan*, 104 Ind. 62.

The deed from the railroad company to Woods was inoperative as to the railroad and necessary fixed appurtenances, and he and those claiming under him had, as against the State, no better rights than mere servants of the corporation, in possession by its consent and for its use: *Thomas v. R. R. Co.*, 101 U. S. 71; *Branch v. Jesup*, 106 Id. 468; *O. & F. R. V. Co. v. Black*, 79 Ill. 262; *Archer v. T. H. & I. R. R. Co.*, 102 Id. 493; *Abbott v. Johnstown & H. R. R. Co.*, 80 N. Y. 28; *Troy & B. R. R. Co. v. Boston H. T. & W. R. R. Co.*, 86 Id. 107; *R. R. Co. v. R. R. Co.*, 4 DeGex & J. 362; *Beman v. Rufford*, 6 Eng. Law and Eq. 111; *Great Northern Ry. Co. v. Ry. Co.*, 12 Id. 224; *Winch v. B. L. & C. J. Ry. Co.*, 13 Id. 516.

The deed to complainants was taken with notice of all the meaning and effect of the deed to their grantor, as a title deed; and of all obligations caused by the articles of association, wherein originated *all* the rights, privileges, and franchises mentioned in complainant's deed; and of the public statutes that Woods had notice of, and of the illegal intentions appearing in the deed to Woods: *Mason v. Payne*, Walker Ch. 459; *Fitzhugh v. Barnard*, 12 Mich. 104–10; *Jacobs v. Miller*, 50 Id. 127.

The State, represented by defendant, in executing the Auditor General's warrant, had rights at least equal to those

of a judgment creditor: How. Stat. § 6203 ; *Evans v. Walsh,* 41 N. J. Law, 283 ; *Moss v. Cummings,* 44 Mich. 361 ; and the deed to complainants is void, by reason of fraud and illegality, as against all proper proceedings on behalf of the State to collect the specific taxes.

[As the Court decides that the State must settle this question by a direct proceeding in equity, and cannot intervene through the sheriff by way of a cross-bill in this suit, the remainder of defendant's brief is omitted.—Reporter.]

Sherwood, J. In 1876 the Lake George & Muskegon River Railroad Company was organized under the general railroad laws of this State, with a capital stock of $60,000. The road to be constructed by said organization was about seven and one-half miles long, and mainly for logging purposes.

The first board of directors were E. H. Hazelton, W. S. Gerrish, J. Verree Watson, Leslie F. Gerrish, and William Stafford, and their offices were at Muskegon.

The road was constructed in 1877, and began to be used in hauling logs that year.

In the month of February, 1878, an attempt was made to increase the capital stock of the company to $100,000, and thereafter the transactions of the company seem to be all based on the amended articles and increase of one hundred thousand dollars capital stock, and the reports to the Auditor General of the State show a like increase. The articles of association were also amended, showing an increase of length of road to twenty-one miles or thereabouts.

On April 12, 1881, the company, by its board of directors, recognized its indebtedness to W. S. Gerrish "for money furnished the corporation to pay its current expenses, the purchase of rolling stock, and material for construction," and by resolution authorized and instructed the president and secretary of the company to execute and deliver to Winfield S. Gerrish a mortgage on its road-bed, iron, spikes, ties, rolling stock, consisting of engines, cars, machinery, machine-shops, and all personal effects now owned and controlled by said cor-

poration, to the amount of fifty thousand dollars, payable at the office of the said company, in Muskegon, in one and one-half years from date, bearing interest at seven per cent. per annum.

On the nineteenth of April, 1881, the president and secretary of said company, pursuant to the resolution stated, executed the company's mortgage and bond to W. S. Gerrish to secure him in the sum of fifty thousand dollars.

On the tenth of May the mortgage was duly acknowledged, and on the thirty-first of May, 1881, the same was recorded in the register's office of Clare county.

On the twenty-seventh of May, 1881, Winfield S. Gerrish, for the consideration of fifty thousand dollars, sold and assigned said mortgage and bond to John L. Woods, of Cleveland, Ohio. The assignment was recorded in the register's office of Clare county, in Liber 2 of Mortgages, page 311.

On the twenty-eighth of November, 1881, the railroad company, by its board of directors, recognized the fact of the company's indebtedness to John L. Woods, of Cleveland, Ohio, in the sum of fifty thousand dollars, and recite in their records :

" Whereas, it appears to us probable that the company will be unable to discharge said indebtedness at maturity, and whereas, said John L. Woods has offered to cancel said debt on the execution and delivery to him of a conveyance of all the property, real and personal, of the company, *Resolved*, that the president be, and he is hereby, authorized to execute and deliver to said John L. Woods a conveyance of the road, rolling stock, and other property of this company (except its bills receivable and bills payable), on the surrender and discharge of the indebtedness aforesaid."

On the same day, Woods discharged the mortgage assigned to him by W. S. Gerrish, and surrendered the bond secured thereby to the company, and received a deed of the property, and took possession thereof. He continued in possession and control thereof until he sold the same to the complainants, on the second day of January, 1882, for the sum of $45,000.

The complainants' deed was recorded March 18, 1882, in the county of Clare, at about which time they were in the quiet

and peaccable possession,of the property, when the sheriff
of Clare county, claiming to be acting under a warrant from
the Auditor General of the State, dated May 16, 1882, levied
upon the property of complainants above mentioned for the
hereinafter mentioned taxes, interest, and penalties stated in
the warrant, with his fees, and interest at 10 per cent., and
to satisfy the same.

The levy was made on the fifth day of June, 1882, and
complainants had been in possession of the property under
their deed at that time since the early part of March previ-
ous.

The sheriff, who is the defendant, says in his return that
the property levied upon was "the property of the Lake
George & Muskegon River Railroad Company," and that he
advertised the same for sale, to satisfy the demand of his
warrant, on the seventeenth of June, 1882, and at the
time of his levy he filed notice thereof as *lis pendens* with
the register of deeds of Clare county.

The warrant recites an indebtedness to the State of Michi-
gan from the Lake George & Muskegon River Railroad
Company for specific taxes for the year 1879, payable July
1, 1880, $2,424.46 ; for the year 1880, due and payable July
1, 1881, $1,856.10 ; and with interest on both of said sums,
making due a total of $4,684.99 the thirteenth day of April,
1882, at the date of the demand claimed to have been made
by the Auditor General.

The warrant further recites that a demand according to
law was made on the thirteenth day of April, 1882, for the
payment of said specific taxes and the penalty of 2 per cent.
per month.

The sale under the sheriff's levy was adjourned from time
to time until enjoined.

On or about the second of August, 1882, the bill in this
cause was filed, and subpœna served, with an injunction to
restrain the sheriff from further executing his warrant.

In addition to the foregoing, the complainants further
claim that the said levy is illegal, unjust, and oppressive, and
that at the time of purchasing the property in question

they had no notice of any lien or claim of lien for taxes, and claimed to be *bona fide* purchasers for full value paid, to wit, $45,000, and were in the actual and peaceable possession of the property as a copartnership at the time of the levy, on the fifth of June, 1882 ; and they further show that they are not a railroad corporation ; had no interest at any time, and have not now, in the Lake George & Muskegon River Railroad Company.

The prayer of complainants' bill is that the proceedings under the defendant's warrant to sell the property levied upon and advertised to be sold may be perpetually restrained, and that the levy may be released and discharged, and for general relief.

The defendant answered the bill, and filed the same on the fifth of January, 1884, and the cause was placed at issue by the complainants' general replication, filed January 21, 1884.

The defendant admits the levy by him as sheriff of Clare county upon the complainants' property as stated in the bill, under and by virtue of the warrant from the Auditor General to obtain the taxes and other moneys claimed in the warrant, and that he advertised the complainants' property for sale as stated, and avers his lawful right so to do ; and, further answering, says that upon information and belief he alleges the truth to be that the Lake George & Muskegon River Railroad Company "owned, had, and possessed, and used in operating said railroad," and as appurtenant to it, all the property described in the warrant, "and that this *status* of ownership, use, and possession continued, as to all the fixed and stationary property, throughout the years 1879, 1880, 1881, and in 1882, and up to the commencement of this suit, or so much of the time aforesaid.

That all the said property became and was subject to liens in favor of the State of Michigan for all the moneys mentioned and claimed in the warrant ;" and that " the said corporation did continue to have such an interest in and relation to said property, and every part thereof, at and through such times."

That the liens of the State of Michigan, as aforesaid, did "attach to said property," and were valid and subsisting liens at the date of said warrant, to secure to the State of Michigan the moneys therein mentioned ; that such liens took precedence over all other claims, demands, or titles, either to or against said company's property held by complainants, and that all steps necessary were legally taken by the State, and its officers and agents, to perfect its claim to the taxes levied under the warrant upon the corporation property ; and that if said corporation ever transferred any or "all of the property aforesaid to said complainants, or to any person or persons under whom they claim, such transfer was either without consideration, or for grossly inadequate consideration, or was on some secret trust for said corporation or some of its officers, and was made and received with intent to delay and defraud the State of Michigan concerning the taxes aforesaid, and with the intent to hinder, delay, and defraud creditors of said corporation, and that any such transfer or transfers were void by reason of fraud, and that of all the matters aforesaid the complainants have had due and timely notice."

Defendant, further answering, says that neither complainants nor said corporation ever paid, or offered to pay, any portion of the taxes or moneys so claimed to be due upon the property mentioned in the warrant for such specific taxes.

The case was heard on pleadings and proofs, before Judge Hart, at the Clare circuit, on the fourteenth day of July, 1885, and on the 20th day of August following the circuit judge filed his decree in the case, denying the relief prayed in complainants' bill; and he further finds, by his decree, that all the material facts and circumstances stated in the answer are true.

That the aggregate of the specific taxes, with the interest due and unpaid at the time of making the decree, was the sum of $5,685, and that the aggregate of the penalties due at the same time was $3,654, making a total aggregate of the specific taxes, interest, and penalties of $9,339, and that

for the payment of this sum the State held a first lien upon the property mentioned in the warrant, and that the State is entitled to enforce such lien by sale of the property, under the decree of the court in this case, to obtain payment of the sum last above stated.

That the complainants did take possession of and convert to their own use the said property, and sold and received pay for a portion of the same, amounting to $6,000, and by means thereof the complainants became liable to pay, and ought to pay, the claim made by the State,—the $9,339,— and the decree then proceeds to direct payment of said sum by the corporation to be made, with interest and costs in this suit to be taxed, including the defendant's costs under his warrant; such payment to be made on or before the first day of October, 1885, and in default thereof that defendant take so much of the property as he could find within the State and get, in the county of Clare, into his possession, as might be necessary to raise the amount so claimed by the defendant upon his execution, and sell the same at such place in the county of Clare as he might select, at public auction, after six weeks' previous notice of the time and place of sale, and containing further directions in case of surplus or deficiency, as in case of foreclosure of mortgages on real estate.

From this decree the complainants take their appeal to this Court.

The record shows that on the thirtieth day of October, 1884, the defendant made a petition to the circuit court in this case, which was joined in by the Attorney General of the State, to be allowed to amend the answer in the case by the insertion therein of certain matters which it is claimed would be proper to bring before the court by cross-bill. This petition was made after the proofs in the cause were all taken, and the cause argued and submitted to the court. Really it would appear that the amendments, or rather the necessity for amendments, was suggested by the arguments made at the hearing.

These amendments were allowed to be made the same day

the petition was presented, against the protest of counsel for the complainants. The defendant claimed, under the amendments thus made to the answer, the benefit of a cross-bill under chancery rule No. 123. In the order allowing said amendments, no opportunity was given for the complainants to make answer or reply.

We do not think these amendments were properly allowed to the answer. The defendant in this case was the sheriff of the county of Clare, where the suit was instituted. As such sheriff, under the direction of the Attorney General's warrant, he made his levy and took possession of the complainants' property. By their bill the complainants ask to have the sheriff enjoined from making sale of their property.

The defendant is a mere nominal party. It is the interest of the State that is to be affected, so far as the defense is concerned; and, whatever may be the exact relation, under his warrant, he sustains to the State, we need not consider, but it is quite certain he in no sense, in this suit, represents the interests of the State.

It is not claimed that, independently of rule 123, any such proceedings could have been had as have been taken in this case, and there is nothing contained in the rule which would warrant them. It was not the intention of the rule to deprive a party of any of his substantial rights secured to him by resort to a cross-bill, but to preserve to him all the benefits to be derived from a cross-bill, by stating the substance thereof in the answer. Upon the filing of a cross-bill the complainant had the right to demur or answer thereto, and take issue on the matter set up in the cross-bill, and support his defense by proofs; and there is nothing in the rule which deprives the party of the benefits of such an issue, or the complainant of any rights to which he was entitled, in making defense to the matter set up in the answer, as fully as he could have done before the rule was made.

No such rights were permitted to the complainants in this case. They were given no time or opportunity to make response to the amended answer. In fact, the amendments

were not filed until after the cause had been heard and submitted to the court for final decree. This was error.

We have now considered the case regarding it as one coming within the rule, but a more serious error was that of allowing the defendant to amend his bill at all. If, under the discretion of the court, an amendment might, in a proper case, where all the rights of all the parties were properly guarded, at so late a stage of the proceedings before decree, be made, it is very clear this is not one of them. The amendment was allowed with a view of affording affirmative relief to the defendant under the amendment made under rule 123. The defendant's answer was filed on the fifth day of January, 1884, and the rule was not made until the sixth day of March following, and it cannot be construed to apply to cases pending when the answer was in at the time it was adopted. The rule has therefore no application to this case.

The case, without the benefit to be derived from the rule, stands without any pleading on the part of the defendant to support the affirmative relief granted, and which relates to matters occurring after, as well as before, the filing of the bill. This, of course, could not be legally done. It was error.

These errors now noticed would of course render a reversal of the decree necessary, but something more is necessary in disposing of the case.

We do not think any case was made for a cross-bill, upon the showing in the record. A cross-bill can be sustained only on matters growing out of the original bill, and embraced in it: Story Eq. Pl. § 631; Adams Eq. 347, 402, 403; 2 Barb. Ch. Pr. 131; Jen. Ch. Pr. 388; *Andrews v. Kibbee*, 12 Mich. 96–7; *Farmers' & Mechanics' Bank v. Bronson*, 14 Mich. 361, 372.

The sheriff is the only defendant, and, as we have said, does not in this suit represent the State. The State can only sue and be impleaded by its officers, and in the way and manner provided by law. In this case the sheriff is only concerned with the legal validity of his levy, and cannot bind the State if he would.

There is no right to file a cross-bill in any case when the complainant in it could not have filed an original bill for the same purpose.

There is no case where a sheriff can file a bill in aid of his execution, or to enforce a claim. If any party files such a bill, it must be done by the creditor, or by some person who is legally authorized to do so in his behalf. Such being the case, it becomes still more apparent that the defendant's amendments to his answer should not have been allowed.

If the complainants' bill in this suit was not proper, as is claimed by this defendant's counsel, the only result should have been its dismissal. The defendant sheriff could claim no other relief.

We think, however, the bill should not have been dismissed. The sheriff's warrant in this case differs in no essential particular from an execution, and under the statute it must be levied on the property of the defendant named in the warrant, and this of course would confine it to the property of the corporation.

We have no law that we have yet discovered, and certainly none has been pointed out to us, which authorizes the sheriff to levy upon the track or road-bed of a railway, even against the corporation. If any levy can be made upon the property of the company, aside from such goods and chattels as may be found and seized and taken into custody by the sheriff, it is only on the franchise of earning tolls as provided by the corporation laws.

The property taken in this case, or levied upon, was not the property of the corporation; that is to say, the legal title was not in the railroad company. If there was any right to reach it at all, it could only be done by virtue of the lien claimed under the statute. If that lien exists, it cannot, under the circumstances stated, be enforced by execution, unless it has been directed by a court of equity, after the right thereto has been adjudicated in a proceeding in such court in behalf of the State against the railroad company and the complainants. No such proceeding has been had, and the levy of the defendant, under his warrant, is therefore invalid, and the

complainants are well entitled to have an injunction against further proceedings thereunder, and have it made perpetual as against this defendant.

Whether the lien claimed against this property exists, and, if so, to what extent, or how far, if ever it existed, it may have been modified by the acts or omissions of any of the parties, are questions which we do not now feel called upon, by this record, to discuss. We .think the decree entered in the case by the circuit judge should be reversed, and a new decree entered in this Court, making the injunction issued in the case perpetual, but without prejudice to the State or Auditor General to take any action for the collection of the taxes due and collectible which may hereafter be deemed proper and necessary to preserve the interest of the State.

The other Justices concurred.