THE CITY OF DETROIT v. THE DETROIT CITY RAILWAY COMPANY.

*Street railway companies—Local taxation.*

1. In fixing *one per cent.* tax on the *gross* earnings of the defendant, by the ordinance of November 14, 1879, the plaintiff and defendant made *that* a substitute for any other *form* or *extent* of *local* taxation.

2. The ordinance adopted January 4, 1887, providing for the payment by defendant of a percentage annually on its *gross* receipts, is an unequivocal contract that this percentage should be in lieu of *all* city taxes except the *land* tax, and it is therefore clear that the city cannot collect *both*; and the same was true of the smaller percentage provided for by the 1879 ordinance.

3. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—The *purpose* of How. Stat. § 3527 (being section 34 of the tram-railway act), in a!lowing street railways to be organized under it on such terms as should be agreed upon, was to enable the roads and the cities to fix upon some *equitable* standard of *local* taxation for *municipal* purposes.

*b*—The cities in this State have no proprietary interest in city streets as their private property, and, whether the fee is nominally in county, city, or private owners, the public control is only in. *trust* to secure to the public thosᵉ rights of a public nature that. exist in public ways of that kind.

*c*—While a considerable discretion is vested in cities concerning the *terms* of user of their streets, and the proper rate to be paid to the city for permitting it, the city sells none of its property, and whatever it exacts for such use must necessarily be by way of tax or license, which is the same thing.

*d*—The constitutionality of the repeal of section 22 of the tram-railway act, requiring companies organized thereunder to pay into the State treasury a specific tax in lieu of all other taxes, was passed upon in *Detroit City Street Railway Co. v. Guthard*, 51 Mich. 180, which decision the Court is not disposed to review.

*e*—Street railway tracks are only special adaptations, for a particular use, of the surface of public highways, and, under our laws concerning levy and sale on execution, each track would be sold as a *whole* to the bidder for the shortest term of years to collect tolls for the use of it.

*f*—The right to *use* street railway tracks is inseparable from the franchise, and, it not being taxable as land, it should properly be taxed as an entirety to the corporation in *one* place, so far as within one city.

Error to Wayne.   (Gartner, J.)   Argued June 25, 1889. Decided October 11, 1889.

Debt for taxes.   Plaintiff brings error.   Affirmed.   The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*John W. McGrath,* for appellant.

*Brennan & Donnelly (F. A. Baker,* of counsel), for defendant.

CAMPBELL, J. The city of Detroit sued defendant for alleged unpaid taxes for the year 1887. The first count was for taxes assessed on personal property to the amount of $439,140. The second count was for one per cent. upon the gross receipts of defendant for six months, ending December 31, 1887, under an ordinance of November 14, 1879, accepted by defendant.

The court below found for defendant under facts determined, and contained in the record. Those facts, so far as material, show this condition of things:

Defendant is a company organized under the tram-railway act, found in chapter 94, How. Stat. By section 22 of that act every such company was required to pay into the State treasury one-half of one per cent. on the capital stock, in lieu of all other taxes on all the property of the company. By amendatory section 34 it was provided that no such company should construct its railway on any city street—

"Without the consent of the municipal authorities of such town or city, and under such regulations, and upon such terms and conditions, as said authorities may from time to time prescribe: *Provided,* further, that after such consent shall have been given, and accepted by the company or corporation to which the same is granted, such authorities shall make no regulations or conditions whereby the rights or franchises so granted shall be destroyed or unreasonably impaired, or such company or corporation be deprived of the right of constructing, maintaining, and operating such railway in the street in such consent or grant named, pursuant to the terms thereof."

Various arrangements were made from time to time between plaintiff and defendant previous to 1879, and on November 14, 1879, a new agreement was made, covering the management and maintenance of defendant's railways in

Detroit, whereby, among other things, it was agreed that defendant should pay yearly a tax of one per cent. on its gross receipts, and should pave and keep in repair the roadway covering the tracks and switches, and that this special tax and paving liability should be in lieu of license, and other taxes, and paving charges.

In 1882 a law was passed repealing section 22 of the tramway law, providing for specific taxes payable to the State. Laws of 1882, p. 4.

A controversy subsequently arose concerning the effect of the various changes in the taxing system, and the validity of taxes assessed by the city, and this led to a final attempt to settle the dispute by a new ordinance covering all matters arising after July, 1882, up to the date of the ordinance, as well as laying down rules for the future. This ordinance, adopted January 4, 1887, and accepted by defendant, provided:

1. That relating back, and running from July 1, 1882, to December 31, 1896, defendant should pay 1½ per cent. annually on its gross receipts, and thereafter two per cent. thereon.

2. That it should pay usual municipal taxes on all its lands and buildings, to be assessed as is done to individuals.

3. These payments were to be in lieu of all taxes, license fees, and charges on the property, stock, rights, and franchises of the defendant, under present or future laws or authority.

4. In case defendant should be directly or indirectly required to pay any other or further tax, license fee, or charges, it should be allowed on the percentage, and defendant not be required to pay any more than such percentage and land taxes, and that defendant's liability should be so confined, without its consent in writing to the contrary.

On January 14, 1887, the defendant paid, and the city accepted, all the percentage due on the basis of the ordinance up to that time. On July 1, 1887, defendant paid into the city treasury, under the ordinance, 1½ per cent. on its gross earnings for the first half of that year, amounting to $3,197.12. The same percentage for the rest of the year

1887 was $3,053.28, making for 1887 a percentage of $6,250.40.

The city assessors, in addition to the land tax, which is not disputed, assessed defendant, on the tax roll of 1887, upon its track, $294,290; upon horses, cars, machinery, and other personalty, $144,850,—making a total of $439,140, and taxes were laid on this basis to the amount of $5,232.70, of which $3,559.16 was for the tracks. This assessed tax was rather more than $1,000 less than the percentage on gross earnings.

The present suit covers nothing but what is claimed by the city for itself.

The specific tax laid by section 22 of the tram-road act all went into the State treasury, where it did nothing towards meeting either State or local expenses. The purpose of section 34, in allowing street railways to be organized under it on such terms as should be agreed upon, was to enable the roads and the cities to fix upon some equitable standard of local taxation for municipal purposes, and this was so understood and acted on by both parties in express terms by fixing one per cent. on the earnings as a tax in lieu of all other local taxes.

The cities in this State have no proprietary interest in city streets as their private property, and, whether the fee is nominally in county, city, or private owners, the public control is only in trust to secure to the public those rights of a public nature that exist in public ways of that kind. While a considerable discretion is vested in cities concerning the terms of user, and the proper rate to be paid to the city for permitting it, the city sells the roads none of its property, and whatever it exacts must necessarily be by way of tax or license, which is the same thing. In fixing the one per cent. tax on gross earnings, in 1879, the city of Detroit and defendant made that the substitute for any other form or extent of local taxation, and, so far as can be judged from the

record, it was a fair approximation to what would have been raised had the usual assessment been made instead.

The effect of the repeal of section 22, if valid, was to abolish the specific tax laid by the State. It is now insisted that this repeal is invalid, because it formed a part of the general tax commission scheme of 1882. It only belonged to that so far as it turned over the property of tram-roads for taxation under the general laws, and we do not see any difficulty in that. In *Detroit City Street Railway Co. v. Guthard*, 51 Mich. 180 (16 N. W. Rep. 328), the defendant in this case brought before us the validity of this repeal. It was not then assailed as invalid, except as claimed to be prevented by a supposed contract in the railway act, and this ground was not regarded by this Court as tenable. The parties, for their own reasons, preferred not to raise any other questions, either as to the validity of the tax itself, or any further constitutional objection. But the constitutionality of the repeal was passed on, and we are not disposed to review it. The tax law of 1885 was passed to continue the scheme of 1882, and the tax assessment of 1887 was made under the law of 1885. We think the State specific tax is repealed.

Under the charter of Detroit there is only one assessment made annually, and the city assessment is made the basis of levying taxes for State and county purposes. Whatever stipulation the city may make as to its own taxes under section 34 of the tram-road law, which is still in force, it is necessary that an assessment roll be made out under the general tax law, to form a basis for State and county taxes. And, under the ordinance of January 4, 1887, it seems to be contemplated that city taxes may be levied in the same way, subject only to the percentage limit referred to.

The contract is unequivocal that this percentage shall be in lieu of all city taxes except the land tax. It is therefore clear that the city cannot collect both. The same was the case with the old smaller percentage, which was to be in lieu

of all local taxes. The increase in 1887 was the result of a compromise, and the old ordinance was repealed by it, so far as the percentage is concerned. Had there been no State specific tax prior to 1882, it is not at all likely that the cities would have been allowed to fix local taxes indefinitely by agreement. At least there would have been less occasion for it. But the peculiar nature of these corporations and of their property may create reasons for special treatment. In the present case, since the general tax law was passed the parties have mutually agreed that a sum shall be paid in lieu of assessable taxes, which turns out to be nearly 20 per cent. more than the regular assessment. The city cannot certainly complain of this, and cannot insist on having both claims allowed. This was never agreed on, and would be an unjustifiable extortion.

It follows that whether the reasons hinted at by the circuit judge should stand as the basis of decision or not, the judgment was correct.

As counsel in the present case, as in the former one (reported in 51 Mich. 180, 16 N. W. Rep. 328), have not seen fit to discuss the peculiar method of assessing the defendant's track, we cannot pass upon it. But we think it proper to direct attention to the language of the tax laws in regard to the place and manner of assessing corporate property. It is not claimed that the tracks can be assessed and dealt with as realty. Inasmuch as in the city of Detroit the wards are not separate municipalities for the purpose of expending money, and it all goes into one treasury, there is in this case no harm done by the division made of various parcels in the several wards. But these tracks are only special adaptations, for a particular use, of the surface of public highways, and, under our laws concerning levy and sale on execution, each track would be sold as a whole to the bidder for the shortest term of years to collect tolls for the use of it. *Hackley v. Mack,* 60 Mich. 591 (27 N. W. Rep. 871); *James v. Plank-*

*road Co.*, 8 Id. 91; How. Stat. § 4871; *McKee v. Railway Co.*, 41 Mich. 274 (1 N. W. Rep. 873).

The right to use the tracks is inseparable from the franchises, and, it not being taxable as land, it should properly be taxed as an entirety to the corporation in one place, so far as within one city.

The judgment should be affirmed, with costs.

The other Justices concurred.