PETIT *v.* FLINT & PERE MARQUETTE RAILROAD CO.

1. COTENANTS — UNAUTHORIZED SALE OF COMMON PROPERTY — RECOVERY OF UNDIVIDED INTEREST—DEFENSES.

An heir's right to recover his undivided interest in land conveyed by his co-heirs without authority cannot be defeated by showing that, upon partition, he can obtain satisfaction from his co-heirs out of the unsold portions of the estate.

2. WILLS—POWER OF SALE—RESTRICTIONS.

The eighth clause of a will read as follows: "I hereby direct that my executors convey to purchasers, by proper deeds of conveyance, what is herein directed to be sold and converted into money, and to my children the several shares herein provided for them," etc. The ninth clause empowered the executors "to sell and deed and convey, according to the true intent and meaning hereof, all and any of the property of my estate left hereby in their hands." The preceding clauses provided for sales of the land only at specified times and for specified purposes. *Held,* that the executors had only a conditional power of sale.

3. SAME.

A will gave the use of certain land to the testator's children, subject to the provision that, whenever the public good and the best interest of the estate should require, the land should

be platted, and so many of the lots sold as should be neces-
sary to create a fund sufficient to pay from the income the
taxes and expenses of platting.    *Held*, not to authorize a sale
of any portion of the land where it had not been platted.

4. SAME—PERPETUITIES.
    Where a provision of a will has been held void for its contra-
    vention of the statute against perpetuities, a power of sale
    conferred upon the executors to enable them to carry out
    the invalid provision is inoperative.

Error to St. Clair; Eldredge, J., presiding.    Submitted
February 6, 1897.    Decided September 23, 1897.

Ejectment by Frank B. Petit against the Flint & Pere
Marquette Railroad Company.    From a judgment for de-
fendant, plaintiff brings error.    Reversed.

The following are the findings of fact and conclusions
of law:

"This action is brought by plaintiff to recover an un-
divided quarter of 'all that part of the southwest quarter of
the northwest quarter of section 15, town 6 north, of
range 17 east, which lies south of the right of way of the
Chicago & Grand Trunk Railroad,' situate in the county
of St. Clair, in this State.

"FACTS.

"(1) The lands in controversy are a part of lands
granted by the United States to Stephen B. Thornton by
patent dated October 15, 1835, recorded in St. Clair
county, in Liber 22 of Deeds, page 498.

"(2) The west half of the northwest quarter of section
15, a part of the lands covered by the grant above men-
tioned, was conveyed by Stephen B. Thornton to Edward
Petit, by warranty deed dated May 6, 1836, recorded in
Liber E of Deeds, on page 93.

"(3) Edward Petit, above named, for over 20 years
prior to his death, lived upon and occupied said west half
of the northwest quarter of said section 15.    The same
was known and called the 'Petit Homestead.'

"(4) The said Edward Petit died, testate, March 18,
1875, still owning and occupying as a homestead some 65
acres of this land, the west half of the northwest quarter

of section 15, and leaving surviving him the following children, to wit: Victoria Louisa Petit (now Smith), born August 26, 1841; Marshall N. Petit, born September 8, 1849; Frank B. Petit, born January 15, 1855; and John B. Petit, born July 18, 1857,—his only heirs at law, no widow surviving him.

"(5) The will of the said Edward Petit, consisting of a will made September 1, 1873, a codicil made September 9, 1874, and a second codicil, made on the 9th day of February, 1875, was admitted to probate in St. Clair county April 28, 1875. A copy thereof is attached hereto, together with a copy of the order of the probate court allowing said will, and granting administration of his estate to the executors named therein, and is marked 'Copy of the Will of Edward Petit,' 'Exhibit A.'

"(6) Prior to his decease, the said Edward Petit had granted to the Chicago & Grand Trunk Railroad Company or its grantors a right of way across the southerly part of his said homestead, which forms the northern boundary of the lands in question.

"(7) On the 1st day of November, 1877, Frank B. Petit, the plaintiff, made, executed, and delivered a deed to Silas L. Ballentine, of Port Huron, of which the annexed Exhibit B is a copy, and which was recorded November 5, 1877, in Liber 61 of Deeds, page 114.

"(8) In the tax rolls for the years 1878, 1879, 1880, and 1881, lands were assessed as follows, to wit (E. Petit estate): 'The west fractional half of the northwest quarter of sections 15, 16, 17, excepting and reserving the lands hertofore sold to E. Fitzgerald, Smith, Wright, Read, and others, and about one and a half acres in the northwest corner, and one and a half acres being in the Indian reserve, and also the Chicago & Grand Trunk Railway, being about 55 acres.' In each of these years the lands as above described were returned delinquent, the taxes being unpaid, and on return to the auditor general were, in each year, rejected for insufficient description, and the amount of several taxes charged back to the county, and the certificates thereof of the auditor general laid each year before the board of supervisors, whose action relative thereto is set forth in the annexed statement, marked 'Exhibit C.' In the roll of 1882, lands were assessed in the same language used in the rolls of the years above mentioned, and reassessed taxes for the years 1878, 1879, 1880, and 1881 returned delinquent. The lands above described (in the tax rolls) were sold for

unpaid taxes of 1882, October 6, 1885, and bid in to the State for $817.66.

"(9) In the several tax rolls for the years 1883, 1884, 1885, 1886, and 1887, lands were assessed in the same language as used in the roll of 1882, returned delinquent, and rejected by the auditor general for the insufficient description.

"(10) On the 1st of May, 1889, Herman W. Stevens became the purchaser of the rights of the State in the lands as sold to the State at the above-mentioned tax sale of 1885, took from the deputy auditor general a deed, of which the annexed Exhibit D is a copy.

"(11) Prior to April 1, 1889, the Port Huron & Northwestern Railway Company had taken, and was on that day in the occupancy of, a strip of land 66 feet in width across the lands in question next south and adjoining the right of way of the Chicago & Grand Trunk Railroad; and, on said April 1st, the defendant company bought the rights and franchises of the Port Huron & Northwestern Railway Company, and went into possession of the said strip, and soon thereafter began negotiations with the executors of the will of Edward Petit to acquire the title to the premises in question.

"(12) On the 11th of September, 1889, the said executors, for the consideration expressed, made their deed to the defendant company, a copy of which is hereto annexed, marked 'Exhibit E,' and also caused to be duly executed and delivered the individual deed of Louisa V. Smith, Marshall N. Petit, and John B. Petit, a copy of which is attached, marked 'Exhibit F.' The sum paid by the defendant company was $2,144.40.

"(13) Immediately after taking the above deeds (in the twelfth paragraph mentioned), the defendant began making improvements on land south of the strip, and built a roundhouse, turntable, and several tracks during the fall of 1889.

"(14) During the summer of 1889, the 'Tunnel Company,' a corporation duly organized, also negotiated with the said executors for the purchase of a portion of the homestead lying north of the Chicago & Grand Trunk Railroad, comprising some four acres. Judge Stevens was acting for the Tunnel Company, and in the interest of that company took the tax deed from the State (Exhibit D), then intending and expecting to be reimbursed out of the price paid by the Tunnel Company. The taking of this tax title was with the approval of Farrand, one of

the executors. Upon consideration, the attorneys for the Tunnel Company decided to acquire title to the land they wished by condemnation proceedings, as a measure of safety.

"(15) On the 2d day of October, 1889, Judge Stevens and wife, upon payment by Farrand, out of the proceeds of the sale to defendant, of the sum paid the State, to wit, $1,177.43, conveyed the lands described in the deed from the auditor general (referring to said deed) to Bethuel C. Farrand, Marshall N. Petit, and Louisa V. Smith, 'executors and trustees of the estate of Edward Petit.'

"(16) Taxes upon the homestead for the years 1883, 1884, 1885, 1886, and 1887, aggregating $972.15, remaining unpaid, at the request of Farrand, executor, Judge Stevens negotiated an adjustment with the city authorities of Port Huron (the corporate limits of which had been extended over the lands) by which, for $750, the city treasurer receipted in full for said taxes, and Farrand paid to said Stevens, December 6, 1889, the sum of $800, being the sum paid by Stevens and a fee of $50. Farrand also paid the state and county tax for 1889, $29.93, and the city tax for the year, $163.28.

"(17) On the 20th day of September, 1889, Silas L. Ballentine conveyed, by a deed of that date, to the defendant company, the lands as described in Exhibits E and F, he making and delivering the deed at the request of B. C. Farrand, one of the executors. This deed, and as well those of which Exhibits E and F are copies, were recorded in the office of the register of deeds for St. Clair county, October 4, 1889.

"(18) The plaintiff, pending the negotiations for sale to defendant of these lands, and also while the condemnation proceedings instituted by the Tunnel Company in the fall of 1889, and shortly after the 11th of September, were pending, was in Montana, and had correspondence with Farrand, executor, and with Judge Stevens, and as well with O'B. J. Atkinson. Exhibit G is a copy of a letter to him from Judge Stevens, soon after its date (October 18, 1889) forwarded to Atkinson. Exhibit H is a copy of a letter from him to B. C. Farrand.

"(19) After the award in said proceedings had been made, Judge Stevens was employed by the executors to file a bill in chancery for them for a construction of the will of Edward Petit. The bill was filed April 15, 1890, and only the children and grandchildren were made parties thereto. N. E. Thomas appeared for the defendants

in that suit pursuant to an understanding had at a conference had between Judge Stevens and the executors, and a power of attorney from the plaintiff. He was appointed guardian *ad litem* for the minors made defendants. Issue was joined, and the cause heard June 25, 1890. The suit was evidently an amicable one, and the special object of the executors and the heirs in having the bill filed was to know how to divide the $2,400 deposited by the Tunnel Company in the probate court. The defendant company in this case was not made a party to the bill so filed. Decree was entered August 1, 1890, which is adopted as the opinion of the Supreme Court on appeal by the executors. See *Farrand* v. *Petit*, 84 Mich. 671.

"(20) On the 2d day of March, 1891, upon the application of plaintiff and John B. Petit for a determination as to whom the money deposited by the Tunnel Company in the condemnation proceedings should be paid, an order was made in the probate court for St. Clair county, of which the annexed Exhibit I is a copy; and thereupon the award and the interest thereon were paid to the four children of Edward Petit in equal shares, the share going to the plaintiff being paid to N. E. Thomas, as his attorney in fact, who subsequently accounted therefor and paid the same to plaintiff.

"(21) Plaintiff having returned from Montana soon after the distribution of the moneys as mentioned in the preceding paragraph, this suit was commenced, the defendant company being in the exclusive possession of the whole of the lands described in Exhibits E and F.

"(22) At some time prior to the death of Edward Petit he had caused a map of at least the portion of the homestead lying north of the Chicago & Grand Trunk Railroad to be made by one I. D. Carleton, and in his second codicil it is mentioned as the 'Petit Plat.' This map was not executed and acknowledged by said Petit, or recorded, in compliance with the provisions of chapter 32 of the Compiled Laws of 1871, as amended by Act No. 108 of the Laws of 1873.

## "CONCLUSIONS OF LAW.

"(1) The sale of the lands described in Exhibit D, at the tax sale of 1885, was unauthorized and void, and Exhibit D conveyed no valid title to the premises in question.

"(2) The plaintiff is not estopped to assert, in this action, title to the premises in question, by reason of any

act done by him, nor by reason of nonaction on his part. Title to land in this State cannot, in an action of law, be maintained upon an estoppel based on action, oral statement, or silence.

"(3) The fact that Louisa V. Smith, Marshall N. Petit, and John B. Petit, the other three children and heirs of Edward Petit, deceased, by their individual deed (Exhibit F), in terms conveyed to defendant, as a whole, 'all that part of the southwest quarter of the northwest quarter of section fifteen (15), in town six (6) north, of range seventeen (17) east, which lies south of the right of way of the Chicago & Grand Trunk Railroad,' and defendant's improvements on the land, do not bar an action of ejectment by plaintiff to recover his claimed undivided one-quarter of said described lands, whatever effect such conveyance and improvements might have on the rights of parties in a proceeding in chancery for a partition of the 'homestead farm.'

"(4) The deed from Frank B. Petit, the plaintiff herein, to Silas L. Ballentine (Exhibit B), did not convey the premises in question, or plaintiff's interest therein.

"(5) The decree in the case of *Farrand* v. *Petit*, 84 Mich. 671, is not conclusive as to the defendant not made a party to that suit; and the defendant company is at liberty, in this suit, to contend, at least, for the existence of a valid power in the executors under the will of Edward Petit, deceased, to convey to it the premises in question. The decree in that case is to be read in the light of the facts presented, the issue made, and the purposes of the suit or proceeding; and it is not to be extended to a holding that the will of Edward Petit, deceased, did not create a valid power in the executors to sell and convey the premises in question. The invalid provision of the sixth clause, attempting to restrain alienation for a fixed period, one not based on lives, may be eliminated from the will, and the realty, not in other portions disposed of, be held to pass as intestate property to the heirs of the testator; yet it may so pass under the provisions of our statute (2 How. Stat. § 5574), and be subject to the execution of a power of sale created in the will of deceased. If the sixth clause, as an entirety, is to be held void for its contravention of the statutes against perpetuities, yet it is to be read and considered in construing other valid clauses of the will. The intention of the testator that portions of the homestead should be sold to raise a fund, the interest of which was to pay the taxes, etc., charged upon the

homestead, contained in the sixth clause, constituted a direction to convert the same into money; and the eighth directs sale and conveyance to purchasers of what is directed in the will to be converted into money. The ninth clause vests in the executors, for the purpose of facilitating the sale, division, and distribution of the estate, the power to sell and convey all and any of the property by the will left in their hands. As to the property in question, as the executors, by the terms of the will, are not expressly authorized and empowered to receive the rents and profits, it may be held that no estate vested in them; yet this clause must be held to create in them a valid power in trust, and their deed to defendant (Exhibit E) is to be held a good execution of said power, in this action.

"(6) The substitution of Mrs. Smith as one of the executors of the will, by the second codicil, in the place of Henry Fish, named in the main will, is not a revocation of the giving part of the ninth clause, nor of the power of sale created therein. The whole will, including the codicils, is to be read together in construing the will; and the evident intent of the testator, deducible from the whole, was to grant to the executors of the will, as changed by the second codicil, the estate and powers created by the various provisions of the will that are lawful.

"(7) The deed from plaintiff to Mrs. Stevens of the premises, made, as it was, after this suit was commenced, was inadmissible as a defense, and would not, in view of the pleadings, affect the plaintiff's right to recover in this action.

"Judgment will be entered for the defendant, with costs."

*H. W. Stevens* and *N. E. Thomas*, for appellant.

*William L. Webber* (*O'Brien J. Atkinson*, of counsel), for appellee.

Moore, J. This is an action of ejectment for an undivided one-fourth of the land described in the declaration. The case was tried before the circuit judge. His findings of fact and conclusions of law will be found in the statement of the case. Plaintiff appeals.

The defendant claims several defenses to plaintiff's cause of action. One of them is a tax deed. We agree with the circuit judge that no valid title was obtained by

virtue of this deed. The assessment which was the basis of the tax sale did not describe any land, and the description in the deed from the auditor general was fatally defective.

Another defense is that plaintiff is estopped from asserting title now because he allowed the sale to go on, and the defendant to make improvements on the land, without objection. We agree with the circuit judge that the plaintiff is not estopped because of any act of his, or want of action on his part. The record shows that, when defendant obtained its title to these lands, plaintiff was in Montana, and there is nothing to show that he had any knowledge of defendant's negotiation for the lands until the defendant had obtained the deed. See *Palmer* v. *Williams*, 24 Mich. 328; *Dickinson* v. *Wright*, 56 Mich. 47; *Fletcher* v. *Kalkaska Circuit Judge*, 81 Mich. 186; *Thirlby* v. *Rainbow*, 93 Mich. 164; *Dean* v. *Crall*, 98 Mich. 591 (39 Am. St. Rep. 571).

Defendant also claims that as it has a deed of the lands in controversy from three of the heirs of Edward Petit, deceased, conveying to it all of the lands in controversy, and, after obtaining said deed, it has made improvements on said land, plaintiff cannot maintain this action; saying that, when division comes to be made between the plaintiff and the three heirs who joined in the deed, satisfaction can be made out of the remainder of the estate to the one who did not join. We agree with the circuit judge that this defense is not well taken, and that the conveyance from the other three heirs of Edward Petit does not bind the plaintiff.

Defendant also insists that plaintiff cannot maintain this action because the defendant now has the title which plaintiff, long before bringing this suit, had conveyed to Mr. Ballentine. An inspection of the record satisfies us that the trial judge was quite right in holding that the land in controversy was excepted from the terms of the deed.

The other defense interposed by the defendant is a deed

made to it by the executors of Edward Petit, deceased. The circuit judge held this defense to be good. Whether it is good or not will depend upon whether the executors were authorized to make the deed by the terms of the will of Edward Petit. This will has been construed in this court in the case of *Farrand* v. *Petit*, 84 Mich. 671, and a reference to that case will make it easy to understand the question involved here, without making this opinion unduly long. It is the claim of the plaintiff that the decree in the *Farrand Case* establishes beyond question the title to the land in controversy in him. It is the contention of the defendant that as it had its deed at the time the *Farrand Case* was commenced, and was in possession of the land, it was a necessary party to the proceeding, and, as it was not made a party, it is not bound by the decree. With our view of the case, we do not deem it necessary to determine this question.

It is insisted by the defendant that, outside of clause 6 of the will, abundant power is conferred upon the executors to make the deed which was made to it; and it quotes the eighth clause of the will, which reads as follows:

"I hereby direct that my executors convey to purchasers, by proper deeds of conveyance, what is herein directed to be sold and converted into money, and to my said children the several shares herein provided for them, and to the children of my said children whatsoever is herein provided to be given to them."

Defendant insists that this confers a general power to sell, sufficient to authorize the sale of all of the real estate. It is also insisted that a like power is conferred by the ninth clause of the will, which reads as follows:

"*Ninth.* I hereby constitute Marshall Petit, Henry Fish, and Bethuel C. Farrand executors of my last will and testament. And to them, for the purpose of facilitating the sale, division, and distribution of my estate as herein provided, I hereby grant, convey, transfer, and set over, in trust for the uses and purposes herein expressed, all my property and estate, real and personal, of which I may be possessed, to be had and held by them in

trust as aforesaid, and to their successors in said trust and their assigns forever. And they and the survivors of them in said trust, or their successors, are hereby authorized and empowered to sell and deed and convey, according to the true intent and meaning hereof, all and any of the property of my estate left hereby in their hands."

To understand the eighth and ninth clauses of the will, it is necessary to know what the clauses earlier than the sixth and seventh contain. The first clause of the will provides for the payment of debts, funeral expenses, and other expenses. The second clause provides for the investment of $2,000 to aid in the establishment of an orphans' home, or a home for the friendless, at Port Huron. The third clause gives to his daughter the use during her natural life of the brick house in which she lives, and 14 lots. The fourth clause gives to each of his three sons the use of one-fourth of the rest of his property, excepting his homestead place of 65 acres, and the use of the homestead place of 65 acres, except the house and lots given to the daughter, "or so much thereof as shall not have been sold by my executors as hereinafter provided for, until the said homestead shall be finally disposed of as hereinafter provided for [deducting certain advances], which said property shall be managed, distributed, paid over, and divided as follows: The personal property belonging to my estate, including all bonds, notes, mortgages, contracts for the sale of timber and land, as soon as the same can be converted into money by the ordinary process of conversion and collection, I direct shall be collected and converted;" and provision was made for the investment and distribution of the property. The fifth clause provides:

"My real estate (not including my homestead of 65 acres), consisting of houses and lots and stores, I direct shall be kept until my son John Petit shall become 21 years of age; * * * and, when the said John Petit shall attain the age of 21 years, then I direct that the said houses and lots and stores shall be sold, and the proceeds divided," etc.

And then come the sixth and seventh clauses.

When these provisions are read consecutively, it is manifest that the power of sale conferred by clauses 8 and 9 could be exercised only at the times and for the purposes named in the preceding clauses, and the sale of any portion of the homestead (and that includes the land in controversy in this proceeding) could be made only at the time and for the purpose indicated in clause 6, except as that was modified afterwards by a codicil, which modification does not affect the land in controversy here. It is quite evident that, at the time the deed was taken, the defendant company did not rely upon the power conferred by clauses 8 and 9, for the deed contains the following:

"This sale and conveyance being made for the purpose of making a fund from the interest of which the taxes on said land may be paid, according to the provisions of the will of Edward Petit, testator."

This reference could refer to no other provision of the will than clause 6, and was undoubtedly put into the deed to show that the deed was executed by virtue of the power contained in clause 6, to sell certain lots to create a fund, the interest of which should be used to pay the taxes and expenses of platting the land. We get back, then, to the question, Do the provisions of clause 6 authorize the making of this deed? Before coming to the provisions of clause 6, provision had been made by the will that Louisa should have the use of the brick house and 14 lots of the homestead. Clause 6 provides that the sons shall have the use of the rest of the homestead until the same shall be otherwise disposed of, and then comes the following direction:

"I direct that, whenever the public good and the best interest of my estate require the same, that this portion of my estate shall be laid out and platted into lots, blocks, and streets, and that so many of the lots shall be sold as may be necessary to make a fund, the interest of which will be sufficient to pay the taxes and expenses of platting and taking care of the same, and that the remainder thereof shall be kept by my executors for 20 years after

my decease, when the same shall be divided and distributed as follows, viz.," etc.

This land is a part of the city of Port Huron. It is evident that, when the provision was put into the will, it was expected the time would come when it would be necessary to run public streets through these lands, and that they should be platted, and that taxes would then be higher than they had been before, and that there would be expense incurred in platting the land. When the deed to the defendant was made, the land conveyed to it had not been platted, and, so far as the record discloses, is not yet platted. Until this was done, we do not see how the executors were clothed with power to make the deed in question.

Another aspect of the case was reached, discussed, and decided in the case of *Farrand* v. *Petit, supra*. It was held—as we think, properly—that the effect of the provisions contained in the sixth clause was to restrain the alienation of property contrary to the provisions of 2 How. Stat. §§ 5530, 5531; but it is claimed that the portion of the sixth clause of the will which attempted to restrain alienation contrary to the provisions of our statute may be eliminated from the will, and the land still be subject to sale by the executors under the power of sale. This view was accepted by the learned judge, basing his opinion upon 2 How. Stat. § 5574. As the very purpose of the power of sale conferred by the sixth clause was to create a fund from the interest of which the taxes might be paid upon the land, so as to restrain its sale for 20 years, and enable the executors to carry into effect the unlawful provisions of the will, we do not think the conclusion of the trial judge is tenable.

Taking the record as it now stands, we think the judge erred in rendering judgment for defendant.

Judgment is reversed, and a new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.