SLEIGHT *v.* ROE.

1. TAXATION—SALE OF DELINQUENT LANDS—STATUTES—PROSPEC-
   TIVE OPERATION.
   The tax law of 1885 (Act No. 153) being confined by its title to
   a prospective operation, sales for delinquent taxes of previous
   years could not be made thereunder.

2. SAME—ASSESSMENT—INSUFFICIENT DESCRIPTION.
   An assessment of numbered lots by reference merely to the sec-
   tion and township in which they are situated is bad, where
   there are several lots of the same number in such section and
   township.

3. SAME—PURCHASE BY TENANT IN COMMON.
   A tenant in common cannot, in the absence of statute authority,
   acquire title as against his co-tenant by purchase of the entire
   premises at a tax sale for taxes assessed during the period of
   the co-tenancy.

4. ADVERSE POSSESSION—LIFE TENANT—REMAINDER-MAN—CO-TEN-
   ANTS—RIGHT OF ENTRY.
   Where a widow owned a life estate in certain premises,
   which she occupied as a homestead, the joint occupancy of
   one of the remainder-men could not become adverse to his
   co-tenants until her death gave them a right of entry.

5. EJECTMENT—RECOVERY FOR IMPROVEMENTS.
   Under 3 Comp. Laws 1897, § 10995, permitting a defendant
   ousted in ejectment to recover for improvements, provided
   he shall have been in actual, peaceable . occupancy for six .
   years before the commencement of the action, or for a less
   time under color of title and in good faith, the occupancy
   contemplated is such as would give title by adverse posses-
   sion; hence, where a part of the period of defendant's occu-
   pancy was during the lifetime of a life tenant, who died
   within six years of the commencement of suit, he was not
   entitled, as against other remainder-men who were his co-
   tenants, to recover for improvements made prior to the death
   of the life tenant.

Error to Ionia; Davis, J.   Submitted December 5,
1900.   Decided January 29, 1901.

Ejectment by Victoria Sleight against Franklin Roe and Etta Roe. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Affirmed.

*F. C. Miller*, for appellants.

*R. A. & W. E. Hawley*, for appellee.

LONG, J. Action of ejectment to recover from defendants the undivided one-fourth interest in lots 163 and 164, village of Portland. The title to the property is conceded to have been in Joseph Roe at the time of his death, in 1880. At his death he left surviving him his widow, Gertrude Roe, and four children, to wit, Victoria Sleight (plaintiff here), Franklin Roe, William Roe, and Emma Jane Collins, all of whom are now living, except Emma Jane Collins, who has since deceased, leaving one child as her sole heir at law. The defendant Franklin Roe is one of the surviving children of Joseph Roe, and Etta Roe is his wife. After Joseph Roe's death an administrator of his estate was appointed, and all the property, except the lots in question, divided among the heirs. These lots constituted the homestead, and the widow remained in possession and occupancy of them until the spring of 1892. The defendant lived with his mother until 1883, when he married, and continued to live away from there until early in 1887. It is the claim of defendants that the widow, having a life estate in the property, should have paid the taxes on the same; that she was called upon to do so, and refused to pay them. Defendants paid the taxes for 1882. They then called upon the plaintiff to pay the taxes for 1883, as the widow had refused to pay them, and requested the other heirs to pay them alternately, each in rotation, and promised that when their turn came they would pay them. Plaintiff refused to have anything to do with the matter. Defendants then bid in the property for the taxes of 1883, 1884, and 1885, and also on a sale made by the treasurer of the village of Portland for the village tax of 1885. Defend-

ants claim under these tax deeds. After Franklin Roe got his first tax deed, which was issued February 1, 1887, he began to improve the property, permitting his mother to live in the house on the premises. It is claimed that these improvements amounted to $322. On January 11, 1892, the widow left the premises and went to live with the defendants, and delivered the keys to them. In April, 1892, the defendants rented the property to one Horton, who paid the rent to them. In the summer of 1893 the defendants moved into the house on the premises, the widow going with them. The widow died in November, 1894. The plaintiff claims title to one-fourth interest as the heir of Joseph Roe, deceased. At the close of the testimony the court below directed a verdict in favor of plaintiff, holding the tax deeds for the years 1883 and 1884 void by reason of the unconstitutionality of the tax law. The court also directed the jury that the tax deed issued for the year 1885 was void because of imperfect description of the lands; that defendant Franklin Roe was a tenant in common with the plaintiff, and could not gain title by adverse possession; and that defendants were not entitled to claim for their improvements.

It is not strenuously urged before us by defendants' counsel that the tax deeds made upon sales of taxes for the years 1883 and 1884 are valid. The sales were made under the tax law of 1885. It has several times been held by this court that the tax law of 1885 was confined by its title to a prospective operation only, and that sales for delinquent taxes of previous years could not be made thereunder. *Humphrey* v. *Auditor General,* 70 Mich. 292 (38 N. W. 214); *Hall* v. *Perry,* 72 Mich. 202 (40 N. W. 324); *McNaughton* v. *Martin,* 72 Mich. 276 (40 N. W. 326); *Auditor General* v. *Bay County Sup'rs,* 106 Mich. 662 (64 N. W. 570); *Norris* v. *Hall,* 124 Mich. 170 (82 N. W. 832).

It is insisted by defendants' counsel that the deed given for the unpaid tax of 1885, and also the deed given by the treasurer of the village of Portland for the unpaid village

tax of 1885, are valid. It is claimed on the other hand that the deed given by the auditor general for the tax of 1885 is void for the reason, among others, that the description of the premises is insufficient. The description in the assessment roll is as follows: "Lot 163–164, plat; section 33, town 6, range 5." The tax deed describes the property as "lots 163 and 164 of section 33, village of Portland, according to the plat thereof." It was shown by the evidence in the case that there were several different lots on section 33 in the township of Portland that were numbered 163 and 164. We think the assessment roll was too indefinite and uncertain in its description to amount to a good assessment. It does not describe or refer to any lots in the township of Portland. *Petit* v. *Railroad Co.*, 114 Mich. 362 (72 N. W. 238); *Jackson* v. *Sloman*, 117 Mich. 126 (75 N. W. 282). See, also, *Auditor General* v. *Smith, ante*, 576 (85 N. W. 8). Several other reasons are claimed why the deed should be held void, and which we think are valid reasons, but which we need not here mention or discuss, as we must hold it void for the first reason assigned.

As to the deed given by the village treasurer of Portland, it appears that there is no provision in the village charter authorizing a tenant in common to purchase the interest of his co-tenant in the premises so held in common at a tax sale; and we think it must be held that these sales by the treasurer conveyed no title to the defendants, and that the payment made by them operated merely as a payment of taxes. It was said in *Page* v. *Webster*, 8 Mich. 264 (77 Am. Dec. 446), that:

"The burden was cast upon him and his co-tenants to pay the taxes assessed against the land. This each might have discharged, so far as his own interest was concerned, by paying his aliquot proportion of the tax, and thus relieve such interest from the lien for the tax which the law imposed upon it. Had Crane done this, and afterwards bid in his co-tenants' interest sold for their default, perhaps a different rule might obtain, and he have acquired a good title as against them; but such is not this case."

That case was cited with approval in *Butler* v. *Porter*, 13 Mich. 292. It was there held that one who is a tenant in common of property, whether in possession or not, cannot acquire title against his co-tenant by a purchase of the entire premises at a tax sale. The rule is that, when one tenant in common becomes the purchaser of such a tax title, he will be held a trustee for the share of his co-tenant. *Frentz* v. *Klotsch*, 28 Wis. 312; *Chickering* v. *Faile*, 38 Ill. 342; *McConnel* v. *Konepel*, 46 Ill. 519. It was also held in *Defreese* v. *Lake*, 109 Mich. 415 (67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584), that the devisee of a life estate in remainder could not, if he accepted such devise, obtain title in fee to the land by purchase at a tax sale for taxes assessed during the incumbency of his predecessor in title, and such purchase, at most, only entitled him to reimbursement from the latter, or to contribution from the remainder-men, to whose benefit the purchase inured. It was also said in that case: "There is abundant authority that a tenant in common, whose duty it is to pay a portion of the taxes, cannot acquire a title as against his co-tenant by purchase at a tax sale for the entire tax;" citing *Dubois* v. *Campau*, 24 Mich. 360, and notes.

It is contended that, notwithstanding the tax deeds were held invalid, defendants had acquired title by adverse possession. We think the court below was right in holding that there was not such title shown. The plaintiff had no right of entry until the death of the widow, which occurred November 5, 1894. This suit was commenced on August 2, 1899, less than five years from the death of the widow. The statute provides as follows:

"The right to recover possession of any land by any person claiming through or under any deed executed by the auditor general by virtue of the provisions of this act shall be forever barred by the actual, open, and continuous possession of any person claiming such land adversely to such tax deed for the period of five years after the execution of such tax deed: *Provided*, that if the person claiming through or under such tax deed shall have once taken

actual and peaceable possession of such land by virtue of his deed, and shall have continued in such actual possession for five years next thereafter, then the provisions of this section shall not apply, but in such case he shall be conclusively deemed the owner in fee simple of such land." Act No. 153, Pub. Acts 1885, § 115.

The statute also provides:

"No person shall bring or maintain any action for the recovery of any land, or the possession thereof, or make any entry thereupon, unless such action is commenced or entry made within five years after the right to make such entry or to bring such action shall have first accrued to the plaintiff, or to some person through whom he claims, when the defendant claims title under a deed made by the auditor general in pursuance of the provisions of this act." Id. § 116.

It is apparent, therefore, that whatever possession the defendants had had not ripened into a title at the time of the commencement of this suit.

But defendants claim that even if the deeds are void, and the statute of limitations has not run against the plaintiff, yet they are entitled to recover one-quarter of the value of all improvements made by them upon the premises. This claim is made under 3 Comp. Laws 1897, § 10995. This statute makes such provision, subject, however, to the following proviso:

"*Provided*, the defendant or defendants, or the person through whom he or they claim title, shall have been in the actual, peaceable occupation of the premises recovered for six years before the commencement of the action: Or *provided*, the same shall have been so occupied for a less time than six years under a color of title and in good faith."

In *Jones* v. *Merrill*, 113 Mich. 433 (71 N. W. 838, 67 Am. St. Rep. 475), it was said: "The occupancy contemplated by this section is such a one as, under the rules of the common law, would entitle one to acquire a title by adverse possession." It is apparent that, under this construction, the defendants could not recover for any im-

provements made prior to the time of the death of the widow, to wit, November 5, 1894.   There is a stipulation filed in this court in the case that the improvements made since 1894 are not relied upon as a basis for reversal of the judgment.   From this stipulation, and from the facts set forth in the record, it is seen that the amount of the improvements since that time is not sufficient to warrant a new trial.

The judgment must be affirmed.

The other Justices concurred.