DAHLEM  *v.*  ABBOTT.

146  605
e153  465

1. TENANCY IN COMMON — ADVERSE POSSESSION — WHAT CONSTI-
TUTES.
Where co-tenants are brothers and sisters claiming as heirs of
a common ancestor, mere possession by one co-tenant is not
sufficient to establish ouster and adverse possession.

2. ADVERSE POSSESSION—TENANTS IN COMMON—EVIDENCE—SUFFI-
CIENCY.
In ejectment to establish plaintiff's title as tenant in common
with defendants, evidence examined, and *held*, not to show
that the possession of defendants was at any time adverse to
that of plaintiff.

3. TENANCY IN COMMON—RIGHTS OF TENANTS—PURCHASE OF TAX
TITLE.
A tenant in common cannot acquire a title as against his co-
tenants by purchase of the entire premises at a sale for taxes
assessed during the period of the co-tenancy, in the absence
of statutory authority.

Error to Muskegon; Russell, J. Submitted June 6,
1906. (Docket No. 13.) Decided December 17, 1906.

Ejectment by Lucy C. Dahlem against John Abbott
and others. There was judgment for defendants on a
verdict directed by the court, and plaintiff brings error.
Reversed.

*Stephen H. Clink*, for appellant.

*Nims, Hoyt, Erwin & Vanderwerp*, for appellees.

McALVAY, J. Plaintiff brought ejectment against
defendants for the recovery of one-sixth of certain lots
situated in the village of Fruitport, Muskegon county,
as one of the heirs of Ursula Converse, her grandmother,
who died in 1872, being the owner in fee of the entire
property in controversy. Ursula Converse, the ancestor,

upon her death, left surviving her a husband and five children, Charles, Augustus, Howell, Matilda, and Mary. Of these all are now dead, except her daughter, the defendant Matilda Converse. Of those representing the other children there now survive: A widow of the son Augustus; Paul and Fred, sons of the daughter Mary; the plaintiff and her brother Charles, children of the son Charles. During the lifetime of Ursula Converse these premises were the home of the family and she conducted a hotel, acting as landlady. After her death the daughter Matilda and her father continued to occupy the premises, carrying on the same business, with the father as head of the household and Matilda as landlady; some of the children returning home when out of work. After the father's death in 1895, Matilda continued the business up to the present time. The expenses connected with the premises have been paid from the proceeds of the business. During all the years since the death of Ursula Converse these premises have been so occupied except for about a year in 1893, when they were leased to another party. The estate of Ursula Converse was never probated or divided. At her death her children were all of age. John Abbott [husband of the daughter Mary] alone defends this suit. The other defendants make no contest.

During the term of years above mentioned, and after the death of the daughter Mary Abbott, the defendant Abbott and Mary's sons Paul and Fred, in the year 1887, were permitted to come and live with the others then occupying these premises. They continued to make this their home, which was provided for them without charge, up to the year 1902, when Abbott returned to live in his own house, leaving the boys with Matilda. While so living on these premises, Abbott purchased them at the annual tax sale in May, 1890, for delinquent taxes for the year 1887. In 1901 he obtained a tax deed, and shortly after caused the same to be recorded. Defendant Matilda Converse, who was sworn as a witness for plaintiff, testified that this tax title was obtained by Abbott for the pur-

pose of protecting her, and to cut off the other heirs; that the property was assessed to the father before the sale for taxes, and since to Abbott, except two years when it was assessed to the two boys, Paul and Fred; that Abbott has paid the taxes part of the time and she has paid them some years; that since the tax sale she has been in possession under Abbott. No evidence was offered on the part of defendants.

At the close of plaintiff's case counsel for defendant moved the court to direct a verdict in his favor for the reasons that the evidence showed (1) that plaintiff's action was barred by the statute of limitations; (2) that Abbott's title by adverse possession was complete at the time this action was brought; (3) that Abbott, by virtue of his tax title and possession under it, had obtained complete title to the premises. This motion was granted and a judgment was entered upon an instructed verdict. Error is assigned upon this action of the court. Plaintiff has established her legal title to an interest in the property as one of the heirs of Ursula Converse.

The questions, then, in the case, are whether plaintiff's title had been defeated by adverse possession, and whether her title has been defeated by defendant Abbott's tax title. There is nothing in the record to show that the possession of Matilda and her father, together with Abbott and his two sons, was adverse to plaintiff as a co-tenant in the estate during the lifetime of the father. Nothing was done by the co-heirs in possession indicating that such possession was adverse. Where co-tenants are brothers and sisters claiming as heirs of a common ancestor, mere possession by one co-tenant is not sufficient to establish ouster and adverse possession. *Fenton* v. *Miller*, 94 Mich. 204.

The father died in 1895, and since that date sufficient time has not elapsed to create title by adverse possession; nor since that time up to the time of obtaining the tax deed is there any evidence of any overt act tending to show that the possession of any of these parties was ad-

verse to plaintiff. Defendant was permitted to enter upon these premises, and was there by license, without doubt, because he was the father of two co-tenants in the estate who were both actually occupying at the same time. The collusive agreement between Abbott and Matilda, as far as the record shows, was unknown to the other parties in interest. No possessory rights to land are acquired by a purchaser at a tax sale until a deed issues, and any agreement Abbott made with Matilda directly after his purchase could not bind her co-tenants. Defendant Abbott's possession was never open, notorious, exclusive, and hostile as to the plaintiff or any other co-tenant. As against his own minor children, he could not obtain title by adverse possession nor acquire their title by obtaining the tax title in himself. His possession was theirs. A tenant in common cannot acquire a title as against his co-tenants by purchase of the entire premises at a sale for taxes assessed during the period of the co-tenancy, in the absence of statutory authority. *Sleight* v. *Roe*, 125 Mich. 585, and cases cited. The plaintiff had no knowledge of any claim of title made by Abbott until his tax deed was recorded. This was about three years before this suit was brought. The tax deed could not be set up to defeat plaintiff's title.

The judgment of the circuit court is reversed, and a new trial granted.

CARPENTER, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.