## STANSELL *v.* AMERICAN RADIATOR CO.

1. EASEMENTS—QUIETING TITLE—TAXATION—TRUSTS.

   Complainant was the purchaser of a tax interest in a thirty-foot strip of land, over which defendant had an easement. The Murphy Chair Company furnished the consideration of the tax purchase and took the conveyance in complainant's name, for its benefit, but without any trust instrument evidencing the nature of the transaction. The title to the thirty-foot strip was held in the name of the secretary and treasurer of the chair company, subject to defendant's easement and to an easement of a third party which owned adjoining premises. Defendant's rights had been recognized by a formal deed of the chair company to defendant in connection with a separate transaction. The Murphy Chair Company held in its own right an easement over the thirty-foot strip, which connected its premises with a public street, and with a railroad right of way. The purpose of complainant's tax purchase was admitted to be that the rights of easement over the premises might be cut off. *Held*, that a suit of complainant to quiet title to the premises would be treated in equity as the suit of the Murphy Chair Company; that the statute prohibiting resulting trusts (3 Comp. Laws, § 8835), was not intended to legalize such a proceeding in fraud of rights of the defendant, and that the easement was appurtenant to property of the chair company,—not an easement in gross.

2. SAME—TAXATION—APPURTENANCE.

   Easements not in gross are assessable to the owner of land to which they are appurtenant. 1 Comp. Laws, §§ 3825, 3850.

3. SAME—DEEDS—CONTRACTS.

   Where a deed contains a provision that the grantee confirms and recognizes an easement described in the conveyance, it is as binding as would be a separate grant of the right of way by the one who accepts the instrument.

4. SAME—TAXATION—DUTY TO PAY TAXES.

   And the owner of the estate to which the easement was appurtenant, owed to the defendant a duty to pay taxes assessed thereon, which duty it discharged by purchasing the tax interest in the complainant's name; nor did it acquire any additional rights by such action.

Appeal from Wayne; Murfin, J.   Submitted October 19, 1910.   (Docket No. 20.)   Decided December 7, 1910.

Bill to quiet title by Arthur D. Stansell against the American Radiator Company.   From a decree dismissing complainant's bill, he appeals.   Affirmed.

*Orla B. Taylor* and *Charles F. Delbridge,* for complainant.

*Bernard B. Selling* (*Charles H. Ripley,* of counsel), for defendant.

Blair, J.   On April 11, 1885, M. J. Murphy & Company, the predecessor of the Murphy Chair Company, purchased certain land in Detroit and a right of way over a 30-foot strip furnishing an outlet to Russell street.   Subsequently, this property and easement were acquired by the Murphy Chair Company.   Briggs and Sill, the originators of the American Can Company, on July 27, 1899, purchased land abutting on the 30-foot strip and on Russell street and Trombley avenue, with an easement for a railway track across the 30-foot strip.   On December 21, 1899, Murphy, Wasey & Company purchased the parcel east of the land of the American Can Company, and the Murphy Chair Company is the present owner thereof. On June 22, 1899, the defendant purchased certain land east of the last-mentioned parcel of the Murphy Chair Company; the deed conveying an easement for a railway track across said 30-foot strip.   On December 9, 1899, the owner of the fee of the 30-foot strip deeded the same to James F. Murphy, trustee, subject to all easements, including defendant's.   This purchase was made with the money of the Murphy Chair Company, of which James F. Murphy was the treasurer and one of the three directors.   On May 16, 1901, the American Radiator Company and the Murphy Chair Company delivered deeds *inter se,* each releasing the land of the other from certain

163 Mich.—34.

other easements relative to tracks to the Detroit, Grand Haven & Milwaukee Railway, but in no way affecting the easement here involved. The deed from the radiator company to the Murphy Chair Company contained the following recital relative to the easement in question:

"The right of way or easement pertaining or belonging to the last-mentioned piece or parcel of land described in a certain deed made by Henry B. Lothrop, as executor of the last will and testament of George V. N. Lothrop, deceased, and others, to the American Radiator Company, dated June 22, 1899, and recorded in the office of the register of deeds in and for said county, in vol. 511 of Deeds, page 407, as the right to construct and maintain a railroad track across the southerly part of the remainder of said premises (being the same premises referred to in said conveyance as contracted to Force & Dickinson, a part of which is now owned by said Murphy, Wasey & Company) and across or along the thirty (30) foot strip mentioned in said contract substantially upon the line of said track as at present constructed, is not released or conveyed, but is recognized and confirmed by the parties hereto."

The taxes not having been paid for the years 1900, 1901, and 1902, the 30-foot strip was sold therefor to one Wiltsie of Rochester, N. Y. On January 6, 1904, the Murphy Chair Company paid to Mr. Wiltsie the amount that he demanded for the certificates of purchase for the taxes of 1900, 1901, and 1902, and had such certificates assigned to one Thomas Fairgreave, an employé in the office of the Murphy Chair Company. Mr. Fairgreave never was informed of this transaction and he never saw the certificates until the trial of the case at bar.

Mr. Fairgreave testified:

"The first time I ever saw these certificates was in this courtroom.

"Q. Did you know that these certificates were assigned to you by Mr. Wiltsie prior to yesterday?

"A. No; I cannot say that I understood.

"Q. The first you ever knew you were the owner of any tax certificates on property out by the plant of the Murphy Chair Company was yesterday. Is that right?

"*A.* I cannot say that I have understood the deal at all. I knew a little about it several years ago when I got a letter from Mr. Wiltsie which I turned over to Mr. James Murphy. I don't recall the year. I don't remember anything about it. I had a vague idea of the business at that time. I simply turned the letter over to Mr. Murphy and had nothing further to do with it. I do not claim any interest in these certificates. At the time I was assistant to Mr. James F. Murphy."

Michael J. Murphy, president of the Murphy Chair Company, testified as to these tax certificates:

"*Q.* I just want to refer to that letter which you wrote to Mr. Wiltsie which was introduced in evidence the other day, Exhibit 5, in which you make this statement, 'Some time ago we obtained from you a similar assignment in the name of Thomas Fairgreave and the property has since stood for assessment purposes in his name. We took an assignment of his title too. Mr. Fairgreave is an employé of ours.' Will you state whether you were in error in making that statement in the letter.

"*A.* Yes, I was in error. I thought that we had taken an assignment. I find that we have not, and under the belief that we had taken an assignment, I claimed that we owned it. * * * I find that we have had the tax certificates in our possession all the time since they came from Mr. Wiltsie. They have never been out of our possession. I have noticed that no tax deed against this property may issue without the surrender of the certificates, so that without the consent of the Murphy Chair Company, there was no way of Mr. Fairgreave getting title."

The 30-foot strip was also sold for the city taxes, for the year 1903, and was bought in by Wiltsie, and a certificate of tax sale was issued to him. This purchase was not made at the request of James F. Murphy or the Murphy Chair Company. On July 7, 1906, the Murphy Chair Company sent its check to Wiltsie for the amount of the tax and charges and received the certificate of tax sale assigned in blank. On August 21, 1906, this blank certificate, filled in with the name of Arthur D. Stansell, an associate of Orla B. Taylor, counsel for the Murphy

Chair Company, and James F. Murphy, was surrendered to the city controller and a tax lease for 99 years was issued to and in the name of Mr. Stansell.

Mr. Stansell testified:

"The certificate was in blank when I got it. I put it in my own name at your direction. I then had the deed, Exhibit 3, made out in pursuance of that certificate. At the time I received the deed, I did not make any written or oral declaration of trust in anybody's favor. I have not been directed by any one to transfer it to any one else. If you were to ask me to transfer the property, I would transfer it as requested. I have never been in possession of the land. I don't think I have ever seen it. * * * I have heard Mr. Murphy's testimony this moning, that he got the certificate for the tax list for the year 1903, but it was my recollection that I got that directly from Mr. Wiltsie himself by writing him for it. I may be mistaken."

Neither Mr. James H. Murphy, Mr. Fairgreave, nor Mr. Stansell ever took possession of this strip, but it was used by the Murphy Chair Company as its own.

Mr. Michael J. Murphy testified:

"The title to that property was taken in the name of James F. Murphy, trustee, for the purpose of preventing a merger of our rights of easement over that, and a merger to the title of the two pieces of property, so as to protect our rights, whether of easement or as squatters. * * *

"Q. So that, from the original purchase of that property, when the title was taken in the name of James F. Murphy, trustee, you have pursued a consistent practice of keeping the record title of that property in the names of other parties besides the company?

"A. Yes, sir. I do not think Mr. Stansell has ever taken possession of this land. I would know, am up there every day. Neither the Murphy Chair Company nor James F. Murphy, trustee, has any agreement in writing with Mr. Stansell to convey the property to either one of them. * * * I suppose Mr. Stansell got the tax certificates in which he put his name in the blanks, 1740, from us. Mr. Taylor was attending to our business and we handed it to him to treat in any way that he thought

right to protect our interest.   I would have to go back to tell you when I first had the idea that it would be possible to cut off the American Radiator Company's rights by obtaining an adverse title through a tax deed or otherwise.   Mr. James F. Murphy bought that 30-foot strip. The purchase was attended to by Mr. Davock, who was acting as our attorney.   Some years after that we discovered that the property had been sold for taxes and that it had been purchased by Mr. Wiltsie, and it occurred to me that it was just possible that our right of easement over that property might be lost, so that I purchased the title from Mr. Wiltsie, in order to protect our right of easement, and had the title put in the name of Thomas Fairgreave.   At that time I reasoned if it was necessary for me to buy tax titles to protect my own easement, that certainly it would be necessary for everybody else to do the same thing to protect their interests.   *   *   *

"Q. Now this suit was begun by Mr. Stansell for the benefit of the Murphy Chair Company, was it not?

"A. Yes, sir.

"Q. There is no question about that.   Mr. Stansell has no interest whatsoever in this piece of property of any kind, has he, except as your representative?

"A. He has the title to it.   We could not sell it.   I do not suppose you would buy it of us.

"Q. He holds the legal title for you, doesn't he?

"A. He holds the legal title.   If there is no object in protecting any one's interest, I do not know whether we will ever ask him to return it to us.   Since this suit was started, the Murphy Chair Company fenced in a part of this property because we are improving the appearance of things down there and we put out a lot of grass and some shrubs, and we wanted to protect the shrubs from being pulled up.   *   *   *

"Q. You knew in 1902 there was sufficient question about it, that you did not want Wiltsie to have any tax titles against that property, didn't you?

"A. We wanted to know who owned the tax titles, certainly.   We didn't want them outstanding in anybody we didn't control in 1902.   *   *   *   It wasn't our property really; that is, I mean legally.   We had possession of it for a good many years—used it.

"Q. James F. Murphy simply held the legal title as trustee for the Murphy Chair Company; that is correct?

"A. Yes.   The Murphy Chair Company had furnished

the money for the purchase of all these tax titles in the name of Fairgreave for 1900, 1901, and 1902. The State and county taxes were paid by Murphy Chair Company money. So far as this particular piece of property is concerned, James F. Murphy, as an individual, never at any time put one dollar into the proposition, either in the way of purchase price or payment of taxes, or anything else. He always owned it as trustee."

July 7, 1906, President Murphy wrote the following letter:

" Mr. CHARLES H. WILTSIE,
          " 320 Powers' Bldg.,
               " Rochester, N. Y.
" *Dear Sir:*
    " We have received your notice to Thomas Fairgreave, with relation to the thirty (30) feet on Russell street, adjoining the Wabash Railway, for which you request him to send you $33.93 for the assignment of your claim upon this property for the taxes of 1903, under which the property was sold. This property really belongs to the Murphy Chair Company and our desire is to obtain in our own name the ninety-nine-year lease to which we are entitled. We wish you would take this lease from the city and assign the same to us. If there are any additional fees for it then we will pay them to you. Some time ago we obtained from you a similar assignment in the name of Thomas Fairgreave and the property has since stood for assessment purposes in his name. We took an assignment of his title to it also. Thomas Fairgreave is an employé of ours and has been for a great many years, and the transaction has gone on under his name for reasons which, probably, will be apparent to you. We are enclosing check for $33.93 to pay taxes, interest and your charges.
                    " Yours very truly,
                         " MURPHY CHAIR COMPANY.
          [Signed]          " M. J. MURPHY, President."

George V. N. Lothrop was the original owner of all of the lands involved.

On November 9, 1907, the bill of complaint was filed in this case to remove the cloud from the title to the 30-foot strip created by the easement of the American Radiator

Company, upon the theory that it was wiped out by the sale and 99-year lease from the city to complainant.   On June 17, 1908, the defendant filed its answer, basing its defense substantially upon the proposition that complainant acquired no rights from the tax sale, certificate, and lease, that in law he was acting for the legal holder of the title of said premises, James F. Murphy, trustee, or his *cestui que trust*, and that the acquiring of said tax certificate by the complainant was in fact and in law the payment of taxes by the person or persons legally bound to pay said taxes.   On December 18, 1909, upon the completion of the hearing of the case, Judge Murfin dismissed the bill of complaint.   The case is here on appeal from this decree.

The issues involved, as stated by counsel for complainant, are:

"(1) Is the position of complainant so independent of that of the other parties in interest that he has a full and complete right of possession of the property, divested of all easements, by reason of his tax lease for 99 years?

"(2) If it be conceded that complainant, the Murphy Chair Company, and James F. Murphy, trustee, are in exactly the same interest, are their relations, or the relations of any of them, to the property or to the defendant, such that it was their duty to pay the taxes upon the 30-foot-strip, and that they could not, by acquiring the tax lease, cut off the easement of the defendant for the term of the lease?"

It is perfectly apparent, as stated by the president of the Murphy Chair Company in his letter, that "this property really belongs to the Murphy Chair Company;" that this suit is instituted by the nominal complainant "for the benefit of the Murphy Chair Company;" that James F. Murphy holds the property for the Murphy Chair Company and not adversely to it and will turn the property over to it in recognition of his moral obligation whenever requested to do so; that the complainant, if successful in this suit, will convey the property discharged of all easements to the Murphy Chair Company; and that the primary object of

these roundabout proceedings is to cut off the easement, for the benefit of the Murphy Chair Company. The statute against resulting trusts, 3 Comp. Laws, § 8835 *et seq.*, was never intended to legalize such proceedings for the benefit of the grantor and in fraud of the rights of others, and we shall treat this suit as the suit of the Murphy Chair Company, and the property as the property of the Murphy Chair Company.

Were the taxes on the 30-foot strip legally assessable against the Murphy Chair Company solely, or should they have been divided and the value of the easements assessed against the holders thereof?

Section 3825, 1 Comp. Laws, provides:

"For the purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law."

Section 3850 provides:

"The words 'cash value,' whenever used in this act, shall be held to mean the usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale. In determining the value the assessor shall also consider the advantages and disadvantages of location, quality of soil, quantity and value of standing timber, water power and privileges, mines, minerals, quarries or other valuable deposits known to be available therein and their value."

While the easement under consideration was not absolutely essential to the enjoyment of the dominant estate, one of its termini was upon that estate, and it was granted to, and to be used and enjoyed by, the defendant, "its successors and assigns," and the easements were recognized by the parties in their deeds relative thereto as appurtenances "which appertain and belong to the following described piece or parcel of land," etc. These easements do not fall within any definition of easements in gross. They were granted or reserved by the original

owner of all of the lands, or his representatives, through whom all of the parties derive their titles, for the benefit of the lands and not as mere personal privileges. They were intended to be appurtenant and not in gross, and as appurtenances were assessable to the dominant estate under the statute above quoted. It has never been the custom in this State to assess such interests separate from the dominant estate, and it is more logical to assess them in connection therewith. *Winston* v. *Johnson,* 42 Minn. 398 (45 N. W. 958); *City of Fall River* v. *County Com'rs,* 125 Mass. 567; *City of Detroit* v. *Railway Co.,* 76 Mich. 421 (43 N. W. 447); *Lever* v. *Grant,* 139 Mich. 273 (102 N. W. 848, 103 N. W. 843); *D. M. Goodwillie Co.* v. *Electric Co.,* 241 Ill. 42 (89 N. E. 272).

The deed of the defendant to the Murphy Chair Company of May 16, 1901, was as much a binding agreement as to its right to enjoy the easement as though the chair company had executed a deed confirming or granting the right of way to the defendant. *Atlantic Dock Co.* v. *Leavitt,* 54 N. Y. 35 (13 Am. Rep. 556); *Hagerty* v. *Lee,* 54 N. J. Law, 580 (25 Atl. 319, 20 L. R. A. 631); *D. M. Goodwillie Co.* v. *Electric Co., supra.*

The original conveyance of the right of way to defendant was as follows:

"* * * together with the right to construct and maintain a railroad track across the southerly part of the remainder of said premises and across or along the 30-foot strip mentioned in said contract substantially upon the line of said track as at present constructed, and also the right to use and enjoy the said easement reserved in and by the deed and conveyance to said Huyett above mentioned; such rights of way and easements, however, to be used and enjoyed by the said third party, its successors and assigns, in common with the owners and occupants of the remainder of the premises described and mentioned in said contract of sale."

Under the law, it was the sole duty of the chair company to pay the taxes on the servient estate; under its contract confirming the right of defendant to construct

and maintain the track and use and enjoy the easement in the future, it owed the duty to the defendant to pay the taxes, and its acquisition of the title through the transfer of the tax-sale certificates to its attorneys was, as to defendant, a mere discharge of its duty, which gave it no new rights as to him. *Dubois* v. *Campau*, 24 Mich. 360; *Sleight* v. *Roe*, 125 Mich. 585 (85 N. W. 10); *Dahlem* v. *Abbott*, 146 Mich. 605 (110 N. W. 47); *Simons* v. *Rood*, 129 Mich. 345 (88 N. W. 879).

The decree of the circuit court was right and is affirmed, with costs to defendant.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.